SHERRILL HOUSE, INC. *vs.* BOARD OF APPEAL OF BOSTON
& another.[1]

Suffolk.   December 6, 1984. — January 29, 1985.

Present: GREANEY, C.J., KASS, & FINE, JJ.

*Zoning,* Person aggrieved.

A plaintiff operating a nursing home as a nonconforming use in a residential
   district lacked standing to challenge a decision of the Boston zoning
   board of appeal granting a permit authorizing the defendant, the owner
   of property neighboring the plaintiff's nursing home, to change the
   nonconforming use of his property from a hospital to a correctional
   facility. [275-279]

CIVIL ACTION commenced in the Superior Court Department
on December 12, 1983.

The case was heard by *Julian T. Houston,* J., sitting under
statutory authority.

*R. K. Gad, III (Edna H. Travis* with him) for the plaintiff.
*John J. Russell* for Ronald J. Carlow.

FINE, J.   Sherrill House, Inc., is a nursing home for the
elderly located on South Huntington Avenue in Boston. Im-
mediately next door to it is the property which is the subject
of this controversy (the locus). It was formerly the site of the
Longwood Hospital. Its present owner, Ronald J. Carlow,
proposes that it be used in the future as a correctional facility
for 125 males sentenced for driving while intoxicated.

Both Sherrill House and the locus are located within a district
zoned as R-8 (general residential) under the Boston Zoning
Code (the Code). Under the Code it is forbidden that property
within a general residential district be used as a nursing home,
hospital or correctional facility. Both Sherrill House and the

---

[1] Ronald J. Carlow.

Longwood Hospital operated lawfully as nonconforming uses. Carlow applied to the Boston zoning board of appeal (board) under § 9-2 of the Code for permission to change the nonconforming use from a hospital to a correctional facility. After a hearing, the board granted a permit authorizing the use change, with certain stated conditions relating, among other things, to the size and characteristics of the inmate population.

Sherrill House had opposed the application before the board and, after the board acted, brought an action under St. 1956, c. 665, § 11, in the Superior Court for judicial review of the issuance of the permit. Sherrill House argues that the board's decision should be annulled for the reasons that (1) the right of the owner of the locus to ask for a change of nonconforming use had lapsed and (2) the proposed substitute use would have adverse effects on the neighborhood. After a hearing on the merits, the judge ruled that Sherrill House was not an aggrieved party and lacked standing to prosecute the action and, therefore, the complaint was dismissed.[2] We affirm.

The Boston Zoning Enabling Act, St. 1956, c. 665, § 11, as appearing in St. 1974, c. 669, § 1, provides that "[a]ny person aggrieved by a decision of [the] board of appeal, whether or not previously a party to the proceedings, or any municipal board or officer, may appeal to the superior court . . . ." Because the language in the Boston Zoning Enabling Act is, in this respect, identical to that in G. L. c. 40A, § 17, as appearing in St. 1982, c. 533, § 1, we may look beyond Boston cases to determine the meaning of aggrieved status for these purposes. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427, 432-433 (1949). This is not a case which is governed by a presumption of standing. Had no evidence been presented on the issue of standing, Sherrill House, as an immediate abutter and thus entitled to receive notice of a public hearing, would have had the benefit of a presumption that it was an aggrieved party. *Marotta* v. *Board of Appeals of Revere,*

---

[2] The issue of standing was raised in a seasonable manner. The judge (as was his right) deferred decision on the question until the evidence had been presented.

336 Mass. 199, 204 (1957). Since the judge heard the entire case on the merits, he was obliged to decide the issue of standing "on all the evidence with no benefit to the plaintiffs from the presumption as such." *Id.* at 204. The plaintiff bears the burden of proof. Although the words "person aggrieved" are not to be narrowly construed (*id.* at 204), whether a party is a person "aggrieved" is "a matter of degree," and "the variety of circumstances which may arise seems to call for the exercise of discretion rather than the imposition of an inflexible rule." *Rafferty* v. *Sancta Maria Hosp.*, 5 Mass. App. Ct. 624, 629 (1977).

We agree with Sherrill House that it has more than a general civic interest in enforcing the zoning ordinance and might incur tangible harm as a result of the maintenance of a correctional facility next door. Even if it proved no more than the likelihood of fear of harm on the part of its clients, visitors and employees, we would not say that a proper party would lack standing to raise these issues. As Sherrill House was an institutional user operating under a prior nonconforming use, however, we do not view it as a proper party because it has no legitimate interest in preserving the integrity of the district as a residential one.

In our view, this case falls within the reasoning of *Circle Lounge & Grille, Inc.,* 324 Mass. at 431. In ruling on a claim of standing on the part of the owner of a restaurant located in a business district to object to a variance for another restaurant to be located nearby, but in a residential district, the court said: "The primary purpose of zoning with reference to land use is the preservation in the public interest of certain neighborhoods against uses which are believed to be deleterious to such neighborhoods. . . . The residence zone in which the . . . land is located was established to protect that zone against business and manufacturing uses. It was not established to protect the plaintiff's restaurant, which is located in a business zone. The residence zone was designed to protect residence against business. It was not designed to protect business against business." *Id.* at 431. Thus, the court ruled that "a proprietor in a less restricted zone is not a 'person aggrieved' within the meaning of the statute by the introduction into a more restricted zone of any use permitted in the zone in which the proprietor's prop-

erty is located." *Id.* at 432. We can discern no valid distinction between the situation of one using his property for a nonconforming use within a residential district and one using his property for a similar use in a nearby less restrictive zone. *Circle Lounge & Grille, Inc.* was followed by our decision in *Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. 210, 217 (1975). In that case certain parties were deemed to lack standing because they could have no "legitimate interest in preserving the integrity of the district from the introduction of further like uses." Although both *Circle Lounge & Grille, Inc.* and *Waltham Motor Inn* were cases in which the plaintiffs were seeking to avoid the entry into their neighborhoods of business competition, we read them as having applicability beyond instances of feared business competition. We think they apply to the present situation in which one operating a nursing home, an institutional use, in a general residential district under a prior nonconforming use right is seeking to have the district in which it is located maintained as residential. See also *Redstone* v. *Board of Appeals of Chelmsford,* 11 Mass. App. Ct. 383 (1981); *Chongris* v. *Board of Appeals of Andover,* 17 Mass. App. Ct. 999 (1984). Compare *Rafferty* v. *Sancta Maria Hosp.,* 5 Mass. App. Ct. at 629-630; *Owens* v. *Board of Appeals of Belmont,* 11 Mass. App. Ct. 994, 995 (1981).

Sherrill House strongly contends that its patients are in fact residents in the district with an interest in having the residential district in which they reside maintained as such. Unquestionably, people live at the nursing home and, for many of them, it may well be their final permanent home. Viewed in this practical sense, however, any hospital, correctional institution or other type of institution in which people live could equally be viewed as a residence. But they are not so regarded for zoning purposes. See Boston Zoning Code § 8-7, Use Items Nos. 22, 22A, 25.

Finally, Sherrill House places heavy reliance on two decisions of the Supreme Judicial Court which state the general proposition that whether a person's property is nonconforming is irrelevant to the issue of standing. In *Reynolds* v. *Board of*

*Appeal of Springfield,* 335 Mass. 464, 469, 470 (1957), the plaintiffs, husband and wife, owners of residential property in a district zoned for residential use, sought to prevent the conversion of a dwelling house, located in the same zoning district, into a nursing home. The plaintiffs in *Reynolds* resided on their property but, for many years, had conducted in their home as a nonconforming use the office aspects of a landscape contracting business. Without discussion, the court ruled that the plaintiffs, notwithstanding the nonconforming use in their residence, were persons aggrieved. We think that the fundamental characteristic of the plaintiffs in *Reynolds* as residents was decisive and that the result as to standing would have been different had the plaintiffs not resided on the property but used it exclusively for business purposes. In *Vainas* v. *Board of Appeals of Lynn,* 337 Mass. 591, 593, 594 (1958), the plaintiff owned two buildings used primarily for residential purposes. One of the plaintiff's buildings was nonconforming because one of its three floors was used for commercial purposes, and it failed to comply with the zoning ordinance's setback requirements. Relying on *Reynolds,* and again without discussion, the court held that the plaintiff was not deprived of his status as a person aggrieved because his own property was nonconforming.

We read these two cases as establishing a narrow exception to the principles stated in the *Circle Lounge & Grille, Inc.* case. In our view, they go no further than to recognize that one who owns property in a residential district, which property either in part, or in some relatively minor way, is nonconforming, and who uses the property for residential purposes, may be viewed as an aggrieved person for purposes of objecting to zoning changes in his residential district because, by reason of his residential use, he has a cognizable interest in preserving the residential character of the district.

In the instant case, the plaintiff is a nursing home institution, seeking, in essence, to have the district in which it is located, and as to which it is nonconforming, maintained as residential. There is indication in the record that, although some scattered residences remain, the neighborhood includes many different

kinds of institutions. Unquestionably, the business interests of Sherrill House might be served better by having as its neighbor residential property rather than a prison.[3] However, given the distinctions between residential and other uses made in the Boston zoning ordinance, we do not think the trial judge was required, in determining the issue of standing, to overlook the plaintiff's primarily economic status as a nursing home institution and to view it, instead, as a residence. Accordingly, we do not disturb the ruling of the trial judge.

*Judgment affirmed.*

---

[3] Although we do not imply that the interests which Sherrill House is seeking to assert in this action are a pretext for a more generalized opposition to the location of a correctional facility in its neighborhood, we note that proposals for new prison facilities are almost always the occasion for neighborhood opposition.