N. CLARK BEDFORD & another[1] *vs.* TRUSTEES OF BOSTON
UNIVERSITY & another[2]
(and a companion case[3]).

No. 86-887.

Suffolk. March 12, 1987. — February 5, 1988.

Present: GREANEY, C.J., PERRETTA, & WARNER, JJ.

*Zoning,* Educational institution; Person aggrieved; Variance; Appeal; Board
of appeals: notice of hearing, jurisdiction; *Practice, Civil,* Zoning appeal,
Parties, Standing. *Notice. Due Process of Law,* Zoning appeal, Notice.

On appeal from a decision of the Boston zoning board of appeal granting
variances and conditional use permits authorizing a university to consoli-
date, improve, and expand the facilities for its college of engineering
located on several lots owned by the university along a narrow and
congested city street, one of which abutted a lot owned by the plaintiff,
there was ample evidence to support the judge's findings that the plain-
tiff's lot was within the scope of concern of St. 1956, c. 665, § 11, the
Boston Zoning Act; that the plaintiff sufficiently demonstrated the poten-
tial for damage to his property; and that, therefore, the plaintiff had
standing to challenge the board's decision. [376-378]

On appeal from a decision of the Boston zoning board of appeal granting
a variance from the floor area to land ratio requirements of the city's
zoning regulations with respect to two lots owned by a university in
which the plaintiff, whose lot was separated from the lots in question
by an additional ten lots owned by the university, contended that it was
entitled under St. 1956, c. 665, § 8, the Boston Zoning Act, as one
"deemed by said board . . . to be affected" by the university's applica-
tion, to be furnished notice by mail of the board's hearing on the appli-
cation, the judge correctly concluded that there was nothing in the record
to show that, in determining the plaintiff was not entitled to receive
notice by mail, the board deviated from its established notice policies
or arbitrarily applied those policies to exclude notice to the plaintiff;

---

[1] The Eight St. Mary Realty Co., a partnership in which N. Clark Bedford
is the sole general partner. Because of the identity of interest of the plaintiffs,
we refer to them in the singular throughout.

[2] The board of appeal of Boston.

[3] The companion case is between the same parties.

furthermore, because the board's notice procedure was not defective and because the plaintiff's appeal from the board's decision was not timely filed, the judge correctly concluded that the plaintiff was not entitled to relief. [378-381]

CIVIL ACTIONS commenced in the Superior Court Department on January 13, 1983, and January 6, 1986, respectively.

The cases were heard by *George C. Keady, Jr.*, J.

*Reginald H. Howe* for the plaintiffs.

*Lawrence S. Elswit* (*Todd L. C. Klipp* with him) for Trustees of Boston University.

PERRETTA, J.  These cross appeals involve challenges to variances and conditional use permits granted by the board of appeal of Boston (board) to Boston University (university) for its property on Babbitt Street and Cummington Street. In the first action, the trial judge annulled the board's decision pertaining to the Babbitt Street property which is abutted on the west by the plaintiff's land. The university appeals and claims that the plaintiff lacked standing to challenge the board's action because the plaintiff was not a "person aggrieved" as required by St. 1956, c. 665, § 11, the Boston Zoning Act (Act). The second action concerns the university's property on Cummington Street which is abutted on the east and west by other university property and by the Massachusetts Turnpike on the south. This action raises the question whether the plaintiff, as the only abutter other than the university itself to the Cummington Street property, was entitled under § 8 of the Act to notice by mail of the hearing before the board on the university's application relating to this locus. The trial judge concluded that the board did not act arbitrarily in not giving the plaintiff notice by mail and dismissed the complaint brought under G. L. c. 231A. On appeal, the plaintiff argues that because it would "be affected," as recited in § 8, by the board's decision, it was entitled to mail notice and that the board's failure to give such notice deprived it of jurisdiction to act on the university's application. We affirm the judgments.

I. *The Property.*

We recite the facts as found by the trial judge and which are common to both appeals. The property is best described

by the accompanying sketch, on which the plaintiff's property is designated by the number 1. The university owns all the property designated as number 2 through 18 on the sketch. The lots on Cummington Street which are the focus of the second action (and the plaintiff's appeal) appear with the numbers 12 and 13. Both actions arise out of the university's plan to consolidate, to improve, and to expand the facilities for its college of engineering. Those facilities are presently located on the university's various lots on Babbitt and Cummington Streets. The plaintiff's property abuts only one of the university's lots on Babbitt Street.

Throughout the time period pertinent to these actions, the university made repeated, unsuccessful attempts to purchase the plaintiff's property. The plaintiff opposed the university's applications before the board on the basis that the proposed plans would dramatically increase pedestrian and vehicular traffic, create a safety hazard, and exacerbate parking problems. The board granted the university's applications relating to Babbitt Street (lots 2 through 5 on the sketch) subject to the "continued safe use of Babbitt Street . . . by existing manufacturing and other uses . . ." This condition was imposed by the board at the plaintiff's request.

On the plaintiff's timely appeal to the Superior Court pursuant to § 11 of the Act, the trial judge concluded that, although a denial of the university's application would create a hardship, that hardship would not be one "peculiar to the locus." He also concluded that the granting of the variances and permits would "measurably increase" vehicular and pedestrian traffic on Babbitt Street and "diminish the light on the east side of the plaintiff's property."

About three months prior to trial on the plaintiff's appeal under § 11, the university applied for variances and permits pertaining to its lots on Cummington Street which are designated on the sketch by numbers 12 and 13. The board did not send the plaintiff notice of the hearing which was held in September, 1985. On October 8, 1985, the board granted the university's application. The plaintiff learned of the board's action on October 23 from an article appearing in a university newspaper.

Bedford *v.* Trustees of Boston University.

Two months later, the plaintiff sought to amend its pending complaint under § 11 by adding its objections to the board's most recent action in respect to the university's Cummington Street property. When that motion was denied, the plaintiff sought declaratory and injunctive relief, claiming that it was entitled to make a collateral attack against the board's decision as it had neither notice nor actual knowledge of the hearing.

II. *The University's Appeal (Babbitt Street).*

An abutting landowner enjoys a presumption of being a "person aggrieved." Because the university offered evidence to rebut the presumption, the trial judge was required to decide the issue of the plaintiff's standing on the basis of all the evidence and without giving the plaintiff any benefit of the presumption. See *Krantz* v. *John Hancock Mut. Life Ins. Co.*, 335 Mass. 703, 711-713 (1957); *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 204 (1957); *Sherrill House, Inc.* v. *Board of Appeal of Boston*, 19 Mass. App. Ct. 274, 275 (1985). In his memorandum of decision, the trial judge states that the "presumption in favor of . . . [the plaintiff] as an abutter has not been overcome." Placing undue emphasis on this passage in isolation, the university argues that the trial judge erroneously accorded the plaintiff the continuing benefit of the presumption rather than deciding the question on the basis of all the evidence presented. When the trial judge's detailed and comprehensive findings of fact and conclusions of law are examined in their entirety, however, the university's argument fails. If the trial judge made a mistake, the error is in his terminology and not his analysis.

Prior to discussing the evidence presented, the trial judge enunciated the correct principles of law and cited the controlling cases. See, e.g., *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 431-433 (1949); *Waltham Motor Inn, Inc.* v. *LaCava*, 3 Mass. App. Ct. 210, 217 (1975); *Paulding* v. *Bruins*, 18 Mass. App. Ct. 707, 709 (1984); *Sherrill House, Inc.* v. *Board of Appeal of Boston*, 19 Mass. App. Ct. at 275-276. He found that "[a]mple evidence has been presented to show that . . . [the plaintiff's] property is within the scope of concern of . . . [the Act]," that the plaintiff has

"sufficiently demonstrated the potential for damage to his prop-
erty," and, therefore, that the "plaintiff has standing to chal-
lenge the [b]oard's decision."

Those findings of fact (which have ample support in the
evidence) made by the trial judge in support of his ultimate
conclusion are as follows. Between 1973 and 1985, the univer-
sity acquired nearly all the buildings in the Babbitt and Cum-
mington streets area. As the university's acquisitions increased,
so did the pedestrian and vehicular traffic, and markedly so.
This increase in traffic resulted in congestion on Babbitt Street
and arguments between the plaintiff's employees and the uni-
versity's students concerning scarce parking spots. The conges-
tion on Babbitt Street is exacerbated by the narrowness of the
street itself. Passage is frequently blocked by delivery trucks
servicing the university's facilities and, in cold weather, by
cars that have stalled after being forced to stop for students
walking to and from the university's buildings. The intended
height of the building proposed by the university would dimin-
ish the light on the easterly side of the plaintiff's smaller build-
ing.[4]

In challenging the plaintiff's standing, the university pre-
sented evidence to show: (1) that the proposed construction
would have no adverse impact on the plaintiff and (2) that the
plaintiff's appeal from the board's decision was not motivated
by concern about the consequences of the university's construc-
tion plans on the neighborhood and was brought "to leverage
the sale price for his property" which the university had been
attempting to purchase. Most of the university's arguments
overlook the basic rule that issues of credibility are reserved
to the trier of fact, in this instance the trial judge, who also
took a view of the premises. Moreover, we see no error in the
trial judge's finding that the plaintiff's standing was not de-
stroyed by reason of his negotiating with the university for a

---

[4] Section 2 of the Act provides, in pertinent part, that "[a] zoning regulation
shall be designed among other purposes to lessen congestion in the streets
. . . to provide adequate light and air; to prevent overcrowding of land;
[and,] to avoid undue concentration of population."

maximum purchase price of his land.[5] On the circumstances here presented, we see nothing offensive in the plaintiff's negotiations and simultaneous attempts to protect an interest recognized by the zoning law. The plaintiff provided ample demonstration that as a result of the board's decision, there was a reasonable likelihood of harm to his property and that the harm was of the type against which the Act is intended to protect.[6] See St. 1956, c. 665, § 2 (note 4, *supra*).

III. *The Plaintiff's Appeal (Cummington Street).*

This action for declaratory and injunctive relief involves the university's application for a variance from the zoning regulation requiring a floor area to land ratio of two to one. The university wants to construct a seven-story and basement building for offices and laboratories to be used by members of its engineering college. There will be one classroom in the building but all other classroom instruction in the field of engineering will continue to be held in various locations scattered over the campus. The university intends to increase its faculty but not its student enrollment with the construction of the building.

When the university applied for a hearing before the board on its application for a variance, the board was required by § 8 of the Act, as amended through St. 1973, c. 296, § 4, to give notice of the hearing by publication in a newspaper of general circulation and by mail to the following persons: (1) the appellant, here the university; (2) the "owners of all property deemed by said board of appeal to be affected thereby, as they appear on the then most recent local tax list"; and (3) to "any person filing written request for notice of hearings, such request

---

[5] The university argues that the trial judge erroneously excluded evidence concerning the plaintiff's demands during his negotiations with the university. Even were we to conclude that the evidence was not barred by the rule against evidence of offers in compromise (see, e.g., *Gerrish* v. *Sweetser*, 4 Pick. 373, 377 [1826]; *Calvin Hosmer, Stolte Co.* v. *Paramount Cone Co.*, 285 Mass. 278, 281-282 [1934]; McCormick, Evidence § 274 [3d ed. 1984]) or by the agreement between the plaintiff and the university, we fail to see the relevance of the university's argument in light of the trial judge's finding that the plaintiff did as the university alleges.

[6] The university concedes that, if the plaintiff has standing, the judgment should be affirmed.

to be renewed yearly in December." Two weeks before the hearing on September 24, 1985, the board gave notice by publication in the Boston Herald, and by mail to the university, the Massachusetts Turnpike Authority and to persons who had filed requests for notices of hearings. As the plaintiff was not an owner of property deemed by the board to be affected by the university's application, he did not receive notice by mail.[7] The plaintiff learned of the board's decision on the last day of the time period in which to file an appeal pursuant to § 11 of the Act.

By this action the plaintiff sought a declaration that the board's decision is invalid for want of jurisdiction because of its notice procedures, which the plaintiff claims are so inadequate as to be defective and which worked to his prejudice. See *Bonan* v. *Board of Appeal of Boston*, 21 Mass. App. Ct. 678, 683-684 (1986), and cases therein cited.

We begin our analysis by noting that, in determining which landowners are likely to be affected by the granting of a variance, the board's decision will be presumed to have been made in good faith. See *Marotta* v. *Board of Appeals of Revere*, 336 Mass. at 204, quoting from *Godfrey* v. *Building Commr. of Boston*, 263 Mass. 589, 591 (1928). Unless the notice procedures adopted by the board to carry out its responsibilities under § 8 of the Act are so manifestly unreasonable as to be arbitrary or capricious, they should not be disturbed. Cf. *Massachusetts Organization of State Engineers & Scientists* v. *Labor Relations Commn.*, 389 Mass. 920, 924 (1983); *Scofield* v. *Berman & Sons*, 393 Mass. 95, 100 (1984), quoting from *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 138 (1949).

At trial, the chairman of the board described the procedure used by the board to determine which property owners would be deemed affected by its decision and, thus, entitled to notice by mail under § 8 of the Act. The owners of property abutting the locus (on the sides, front and back) for which a variance has been sought receive notice as a matter of course. The

---

[7] The plaintiff does not claim that he had filed a written request with the board to be given notice of hearings.

determination of which properties abut the locus is made upon the basis of official street maps, stored at city hall, with each street number on the map treated as a separate property. If the locus is bounded on any side by a public way, the owner of the property immediately on the opposite side of the way is treated as a direct abutter to the locus. In addition to direct abutters, notice is sent to abutters of abutters, again determined by the street numbers on the maps. When the building to be constructed is particularly large, about twenty or more stories, the number of property owners to be notified by mail can increase.

When this procedure was applied to the instant case, those owners determined by the board to be entitled to notice by mail were, as can be seen from the sketch, the Massachusetts Turnpike Authority and the university, as they are abutters and abutters to abutters of the applicant, the university itself. We first put to rest the plaintiff's suggestion that the circumstances would seem to warrant an inference that the "board and the university purposely tried to hide the application" from him. The trial judge found, and our review of the record establishes him to be correct, that there was nothing to show that in sending notice in this case the board "deviated from its established notice policies or arbitrarily applied those policies to exclude notice" to the plaintiff.

All the owners of property located within the same zone as the applicant's obviously are not entitled to notice by mail, and a line must be drawn somewhere. We think that the board reasonably could conclude that whether an owner is likely to be affected will depend upon the owner's proximity to the applicant's locus as considered not in isolation but with due regard for the size of the intended building. The plaintiff argues that had the board adopted notice procedures consistent with the definition of "lot" set out in § 2-1(26) of the zoning code of the city of Boston, that is, a "parcel of land . . . in single ownership, and not divided by a street," he would have been entitled to notice as an abutter to an abutter. That may well be true, but it nonetheless begs the question. The issue is not whether there was a different procedure that could have been

adopted but whether the procedure in fact adopted was arbitrary and capricious. There is nothing in the enabling statute which limits the board's discretion by requiring it to adopt particular terms and assign those terms a specific meaning for all purposes.

In reaching our conclusion, we have not placed any reliance upon those additional notice provisions set out in § 8, notice by publication and by mail to anyone filing an annual request. Those provisions pertain irrespective of the method adopted by the board to determine who would be likely to be deemed affected. Rather, our decision is based upon the reasonableness and fairness of the procedure designed by the board while acting within the limits of the discretion conferred upon it under the enabling statute.

In the absence of a defect in notice or procedure which deprives the board of jurisdiction over the matter before it, an appeal from the board's decision must be brought within the fifteen-day appeal period established by § 11 of the Act. See *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 518-521 (1965); *Lane* v. *Selectmen of Great Barrington*, 352 Mass. 523, 526 (1967). Cf. *Cappuccio* v. *Zoning Bd. of Appeals of Spencer*, 398 Mass. 304, 309-311 & n.8 (1986). Because the board's notice procedure was not defective and because the plaintiff's appeal from the board's decision was not timely filed, the trial judge correctly concluded that the plaintiff was not entitled to relief.[8]

---

[8] Even had the plaintiff established a defect in notice, he would not have prevailed on the merits. In an abundance of caution, the trial judge found in the alternative that even were the plaintiff held to be an abutter and entitled to notice and the benefit of the presumption of standing, *Marotta* v. *Zoning Bd. of Appeals of Revere*, 336 Mass. at 204, he would gain nothing. On all the evidence presented, the plaintiff was not a person aggrieved by the granting of the variance. Those facts found by the trial judge show that there is a distance of 935 feet between the westerly line of the locus and the easterly, or nearest, boundary of the plaintiffs' property. "As the crow flies," that distance is 850 feet. There is no vacant land between the locus and the plaintiff's property. Except for the university's building appearing on the property designated by the number 5 on the sketch, the intended building will be the only one on Babbitt and Cummington Streets which is more than two stories. The new facilities will be

IV. *Conclusion.*

It follows from what we have said that the judgment entered in case no. 59343, annulling the board's decision, is affirmed. The judgment entered in case no. 80587, dismissing the plaintiff's complaint without declaring the rights of the parties is vacated, and a new judgment is to be entered providing that notice of the hearing given by the board was reasonable and sufficient and that no appeal from the board's decision will now lie for the plaintiff.

*So ordered.*

---

used for offices and laboratories and will not result in an increase to the engineering college's student enrollment. If construction and occupancy of the building take place, "there will be a slight but measurable increase in pedestrian traffic and some slight but immeasurable increase in vehicular traffic passing the property of the plaintiff."

If the matter were before us, we would have concluded that on all the evidence presented and found credible by the trial judge, he would not have abused his discretion in deciding that a slight but measurable increase in pedestrian traffic was an insufficient basis upon which to conclude that the plaintiff was a person aggrieved by the board's decision. See *Circle Lounge & Grill, Inc.* v. *Board of Appeal of Boston*, 324 Mass. at 430. Contrast *Paulding* v. *Bruins*, 18 Mass. App. Ct. at 709.