SONYA MARASHLIAN & another[1] *vs.* ZONING BOARD OF APPEALS OF NEWBURYPORT & others.[2] No. 93-P-907. October 20, 1994. *Zoning,* Appeal, Parties, Person aggrieved. *Practice, Civil,* Zoning appeal, Standing, Parties. Further appellate review granted, 419 Mass. 1102 (1994).

The culmination of a twenty-five-year effort of the Newburyport redevelopment authority to rehabilitate Newburyport's blighted and decadent waterfront area and to revitalize the downtown business economy, the trial judge found, was the proposed construction of a hotel with conference center facilities on urban renewal land in the downtown waterfront section of Newburyport. The zoning board of appeals of the city of Newburyport granted the defendant Foster Properties, Ltd. (Foster), a special permit and two variances for the hotel, all of which the plaintiffs sought to annul. The judge concluded that plaintiffs Snow and Marashlian had standing to maintain the action, but that the board had not exceeded its authority.

The case is controlled by our decision in *Barvenik* v. *Aldermen of Newton,* 33 Mass. App. Ct. 129 (1992), which was decided after the decision of the judge in this case. To the same effect are our decisions in *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge,* 27 Mass. App. Ct. 491, 493 (1989), and *Cohen* v. *Zoning Bd. of Appeals of Plymouth,* 35 Mass. App. Ct. 619, 622-624 (1993). In *Barvenik* we affirmed the judgment in favor of the defendants on the ground that the plaintiffs had failed to show they were aggrieved persons entitled to maintain the action under G. L. c. 40A, § 17. We affirm the final judgment in favor of the defendants in this case for the same reason.[3]

---

[1]Christopher L. Snow. The city council of the city of Newburyport and the planning board of the city of Newburyport, originally named as plaintiffs in this case, did not appeal.

[2]Newburyport redevelopment authority and Foster Properties, Ltd.

[3]So far, litigation concerning this project has consumed more than five years. The board's decision was dated March 15, 1989, and the notice of appeal from that decision was dated March 31, 1989. The judge's amended decision was issued October 23, 1991. The docket entries in the record before us reveal that the notice of the assembly of the record on appeal was not given until June 22, 1993. The case was argued in this court on May 16, 1994.

Since the issue of standing is contested, the plaintiffs recognize that the outcome must be determined on all of the evidence, and not on any presumption favoring the plaintiffs. *Bedford* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 372, 376 (1988). As to their standing, the plaintiffs rely entirely upon their own testimony and one sentence taken from the written report of the defendants' expert.[4]

Snow, the owner of a building (containing three commercial tenants and several apartments) located across the street from the proposed project, testified as follows: "I think that eliminating the parking on the waterfront is going to make it impossible to conduct business in downtown Newburyport. I think that the traffic flow with the hotel is going to create a serious gridlock situation on Water Street . . . and into Merrimack Street. I think there's going to probably be at least traffic lights that are going to be needed to handle the traffic that's going to be in that situation." Summarizing his own testimony, Snow said, "It's going to be impossible to find parking spaces. Simple as that."

As in *Barvenik*, the judge's findings "undercut the conclusion that the plaintiffs had standing." *Id.* at 136. He found that"[e]ven though some public parking spaces will be lost as a result of the development of the hotel, . . . the supply of public parking spaces in the area will be adequate to meet the demand. . . . [T]he 220 parking spaces which must be provided as a condition to the parking variance will be adequate to meet the demands of the Project." The judge also found that "the Project will not add to any existing on-street parking congestion in the area." These findings are supported by the "Impact Analysis Findings Summary" cited by the plaintiffs: "Sufficient parking for the proposed project will be provided on-site (43 spaces) and off-site (127 spaces) at the West Street Parking Lot."

As to Snow's fears about "a serious gridlock situation," the judge found the following: "With respect to traffic, the project is expected to minimally increase traffic volumes and . . . site-generated traffic will not have a major impact on area traffic patterns. Any adverse traffic impacts will be controlled by implementing certain mitigation measures." In effect, this finding, supported by the evidence, undermined the factual basis for Snow's complaint of the board's decision.

Marashlian, the owner of property directly across the street from the hotel, uses a parking lot for business and guest parking that is to be used for hotel parking. (Parking is currently available to Marashlian and her guests in a municipal lot on Green Street, but that lot has a three-hour restriction.) She testified as follows: "It's going to affect us a great deal because already parking is at a premium in Newburyport and with the hotel taking all of the east part and a good part of the west part of the

---

[4]The record appendix includes only portions of the testimony of Snow and Marashlian, and we look only to what is in the record before us.

parking that we now use, it's going to make it that much more difficult, if not impossible, to find parking. . . . Our neighborhood at night is quiet and peaceful and very tranquil, which is one of the reasons we purchased this property in the first place. Both my husband and I are in very high stress occupations and we picked this place first of all because of its tranquility. Being on the river and on the park is very quiet at night. . . . The proposed valet parking is going to be very distressful to us. We, like most people who live on the river, enjoy sleeping with our windows open, and since we are directly abutting over where the valet parking is going to be, we anticipate more lighting, more pollution, completely disrupting what is now very tranquil and peaceful. And we are very upset about that."

We have previously recited the judge's findings as to parking and traffic; as to Marashlian's fears about valet parking, the judge found that "[v]alet parking for the Project can be managed successfully and valet parking is desirable because it maximizes the number of parking spaces available for the hotel as well as the public."

The judge's findings bring this case well within the scope of our previous decisions. *Barvenik* emphasizes two basic points. First, "[s]ubjective and unspecific fears" about neighborhood feelings, loss of open space, and the like, provide no basis for aggrievement. *Id.* at 132-133. Marashlian's fears — because of "high stress occupations" — of the loss of "tranquility" in the neighborhood fall into this category. Her testimony regarding her fear of the loss of neighborhood tranquility is entitled to no weight, however understandable her apprehensions.

Second, legitimate zoning-related concerns must be more than "conjecture and hypothesis." *Id.* at 133. There must be "specific evidence demonstrating a reasonable likelihood" that the plaintiffs' property interests or legal rights will be adversely affected. *Ibid.* Based on the judge's findings, Snow and Marashlian have failed to make a "specific showing that the plaintffs will either be injured or that such an injury would be special and different from that which others throughout the zone would experience . . . ." *Cohen* v. *Zoning Bd. of Appeals of Plymouth*, 35 Mass. App. Ct. at 623.

*Judgment affirmed.*

*Mark Guay* for the plaintiffs.
*Timothy J. Courville* for Foster Properties, Ltd.