Sikora, J.
RULING
Upon consideration of all summary judgment motion and opposition materials and of oral argument by the parties, the court hereby (1) DENIES the motion of defendant South Boston New Housing, LLC, for summary judgment; and (2) ALLOWS the motion of plaintiff John Van Burén for summary judgment against all defendants.
ORDER FOR JUDGMENT
Judgment in favor of plaintiff John T. Van Burén and against the defendants South Boston New Housing, LLC, and the Boston Zoning Board of Appeals shall now enter upon Counts One and Two (le. all Counts) annulling the variance granted by the defendant Board to the defendant South Boston New Housing, LLC, by the decision of October 8, 2002 (B.C.-23267) permitting construction of a single-family dwelling at 149 D Street South Boston.
REASONING
Procedural History
1. On July 8, 2002, the defendant South Boston New Housing, LLC (“New Housing”) submitted to the City of Boston Inspectional Services Department (“the ISD”) an Application for a permit to construct a single-family dwelling on the vacant lot at 149 D Street in South Boston (“the locus” or “the site”).
2. On July 23, 2002, the ISD notified New Housing of the denial of its Application upon multiple specified grounds of noncompliance with Boston Zoning Code standards.
3. New Housing immediately appealed the denial to the Boston Zoning Board of Appeals (“the Board”). It *704 sought variances from the enumerated Code standards.
4. The Board conducted a public hearing on September 19, 2002. On October 8, 2002, it granted all requested variances. The Board's decision entered on November 7, 2002.
5. On December 6, 2002, John T. Van Buren, the owner of the abutting single-family residence at 151 D Street, South Boston, timely filed the present action in the Superior Court under authority of Section 11 of the Boston Zoning Enabling Act, St. 1956, c. 665, as amended. Mr. Van Buren challenges the validity of the variances granted by the Board as unauthorized by the Enabling Act and by the pursuant Boston Zoning Code. The parties completed the pleadings and discovery, and then submitted the present cross motions for summary judgment.
Undisputed Facts
The following undisputed facts emerge from the pleadings, discovery, and the parties' summary judgment proposals of material facts required by Superior Court Rule 9A(b) (5).
1. In January of 2001 the plaintiff John Van Buren purchased the three-story wooden townhouse located at 151 D Street, South Boston.
2. That residence is the southern end unit of a row of four similar new townhouses constructed along D Street. Each of the four Is separated from its neighbor by a narrow opening or alley of several feet in width. All four of the lots and townhouses are rectangular.
3. Abutting Van Buren's house on the south side is the vacant lot or locus designated as 149 D Street. The City of Boston owns It. It is rectangular and similar in dimension to the four townhouse lots: approximately 80 feet in depth; and 28 feet in width and frontage. The lot forms an open space at the corner of D Street and Seventh Street.
4. Van Buren paid $368,000.00 for his residence. His unit at the southern end of the row and the unit at the northern end both sold for a price $15,000.00 higher than the two interior townhouses (Affidavit of realtor Brian K. Urban, paragraph 5, uncontradicted by opposing evidence).
5. On the southern facade of his house, 10 regular-sized and two small windows overlook the open corner lot. The north side of the house and the back of the house face the walls of structures of equal height at distance of about three yards and 10 yards respectively.
6. As Appendices 1 and 2 of the present Ruling and Order, I attach photographs of the four existing townhouses, the open lot, and the intersection of D Street and Seventh Street.
7. The neighborhood is old, urban, densely built, and heavily traveled.
8. The codefendant developer New Housing has arranged to purchase the open lot and wishes to construct a single-family townhouse dwelling on it. This proposal is part of a wider project supported by the City administration and designed to add 16 units of affordable housing on eight separate lots within South Boston.
9. The New Housing building plan and Application to the ISD presented the following details. The proposed townhouse would occupy almost the entirety of the forward area of the lot with a length of 60 feet, a uniform width of 23 feet, and a height of 28 feet and six inches. A small back yard and a carport would occupy the rear of the lot. The height of the New Housing structure would approximate that of Van Buren's residence. The north side of the new house would lie about 10 feet away from the south side of Van Buren's.
10. The ISD's denial of the Application on July 23, 2002, rested upon eight separate infractions of the Boston Zoning Code: (a) insufficient lot area; (b) insufficient lot width; (c) insufficient lot frontage; (d) excessive floor area ratio; (e) insufficient usable open space (for off-street parking); (1) insufficient front yard; (g) insufficient traffic visibility across the corner (of D Street and Seventh Street); and (h) noncompliance with special provisions governing corner lots.
11. New Housing's Appeal to the Board presented the following ground:
PROVIDE REASON WHY BOARD SHOULD GRANT RELIEF.
We believe that granting this appeal will establish stability, affordable home ownership and turn a vacant City owned lot into individually owned new housing units.
12. The decisions of the Board of Appeal issued on October 8, 2002, contained a general conclusion that the applicant met all the conditions for a variance prescribed by the Boston Zoning Code Sections 7-3(a), (b), and (c). The decision of the Board contained no specific findings of fact.
Analysis
Introduction: Summary Judgment Standard in These Circumstances
The essential material facts are undisputed. Upon that basis each party is moving for summary judgment in its favor rather than arguing for denial of summary judgment by reason of genuine issues of material fact. In these circumstances the task of the motion judge is to apply the law to the core of undisputed material facts. If the material facts and the applicable law are settled, summary judgment will be appropriate. See Opara v. Massachusetts Life Ins. Co., 441 Mass. 539, 544 (2004); Lindsay v. Romano, 427 Mass. 771, 773 (1998); and Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Standing
New Housing trains its entire argument against Van l3uren's standing to challenge its variance (Law Memorandum, Section III, pp. 9-19). It questions the validity of his alleged interests or benefits in the continuing *705 openness of the corner lot. For the following reasons Van Burén has ample standing to oppose the variance.
The Boston Zoning Enabling Act, St. 1956, c. 665, §11, authorizes “[a]ny person aggrieved” by an action of the Zoning Board of Appeals to challenge it by an action in the Superior Court. The phrase “[a]ny person aggrieved” is identical to the language of G.L.c. 40A, §17, conferring standing against zoning boards in all other municipalities of the Commonwealth. The identity of the language should mean the identity of the concept. No principled distinction and no peculiar meaning of standing has developed for the Boston Board and Zoning Code. Rinaldi v. Board of Appeal of Boston, 50 Mass.App.Ct. 657, 659 (2001); see especially Ruggles v. Board of Appeal of the City of Boston, Suffolk Superior Court Civil Action No. 01-5275-B (per Sanders, J., January 3, 2002) (summary judgment decision annulling variance and ordering the deconstruction of the resulting house). Consequently the accumulated decisional law under G.L.c. 40A, §17, applies to questions of standing under the Boston Enabling Act. See especially Circle Lounge & Grille, Inc. v. Board of Appeals of Boston, 324 Mass. 427, 432-33 (1949); McGee v. Board of Appeal of Boston, 62 Mass.App.Ct. at 930; and Sherrill House, Inc. v. Board of Appeal of Boston, 19 Mass.App.Ct. 274, 275 (1985).
In the leading decision of Marashlian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719, 721-22 (1996) (cases assembled and discussed), the Supreme Judicial Court summarized the main axioms and corollaries of zoning “aggrievement” and standing. The complainant must present an injury specific and particular to him, and not a harm general to the community. The court should not define aggrievement “narrowly.” The injury must be a perceptible infringement of a legally recognized interest. It should be definite and not speculative. Abutters enjoy a rebuttable presumption of aggrievement. If a responding party challenges standing, the abutter’s presumption dissolves and he must introduce credible evidence of standing de novo as a jurisdictional requirement. To achieve standing, the complainant need not establish probable success on the ultimate merits of his challenge. Standing typically reduces to a factual question of degree for the trial judge.
In this instance Mr. Van Burén claims specific harm to anumber of legally recognized interests: (1) reduction of the fair market value of his home; (2) loss of on-street parking; (3) elimination of light and air along the southern facade of his residence; (4) diminished privacy; (5) increased noise; and (6) lost views or aesthetics. As to each, the factual materials establish the following.
1.Reduced Market Value of the Townhouse
Lost market value is a recognized basis for a complainant’s challenge. Tsagronis v. Board of Appeals of Wareham, 415 Mass. 329, 330 n.4 (1993). Here Van Burén has submitted the affidavit of an experienced realtor knowledgeable about the South Boston market and the properties at issue. Realtor Brian F. Urban reports that the end homes of the adjacent four-unit row sold in 2001 for $15,000.00 more than the middle homes; that corner lot homes with unobstructed windows on three sides sell for a premium over non-corner-lot homes with obstructed windows on more than one side; and that the placement of New Housing’s townhouse at 149 D Street would reduce the value of the Van Burén house by $20,000.00 to $30,000.00. Urban Affidavit paragraphs 3 through 15. New Housing and the Board have introduced no contrary opinion. This information is “unmet by countervailing materials.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
In addition, the claimed loss of market value is overwhelmingly plausible from the undisputed circumstances. An examination of the photographs (Appendices 1 and 2) of the existing townhouses and the lot, and of the diagrams and specifications for the intended new'house [both furnished in the parties’ uncontroverted factual submissions under Superior Court Rule 9A(b)(5) at Tab B; and by the Affidavit of New Housing attorney Jeffrey K. Ganguly at Exhibit B, respectively] demonstrates that the new structure would convert Van Buren’s house from a sunlit open comer dwelling to a darkened interior unit.
2.Loss of On-Street Parking
Decreased parking availability is a concern within the scope of the zoning code and a consequent basis for standing for an affected claimant. Marashlian, 421 Mass. at 722; Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. 427, 427 (1949); and Bedford v. Trustees of Boston University, 25 Mass.App.Ct. 372, 376-77 (1988). The same photographs and diagrams show the cramped spacing and limited street frontage of the existing townhouses and of the projected townhouse. The addition of the variant townhouse would include a rear car port, but would force any second car of the owner and the vehicles of his visitors (automobiles or SUVs) onto the already inadequate D Street frontage and Seventh Street side curb. The loss of street parking is patent and serious. Significantly the ISD denial of New Housing’s Application itemized “insufficient off-street parking” as a violation of the Zoning Code (Amended Complaint, Exhibit B). The Board never addressed it.
3.Loss of Light and Air
This diminution also is an injuiy capable of conferring standing. See McGee v. Board of Appeal of Boston, 62 Mass.App.Ct. 930, 931 (2004); Bertrand v. Board of Appeals of Bourne, 58 Mass.App.Ct. 912, 912 (2003); Bedford, 25 Mass.App.Ct. at 377 & n.4; and Ruggles v. Board of Appeal of the City of Boston, supra. It is undisputed that New Housing’s dwelling would cut off all 12 of Van Buren’s south side windows from light and air.
4.Increased Noise
This intrusion also will contribute to the support of standing. Bertrand, 58 Mass.App.Ct. at 912; Ruggles, *706 supra. The new structure would be about 10 feet away from Van Buren’s south wall. The new house would have a small back yard and a car port bordering directly against Van Buren’s narrow side space and lying about six feet from some of this windows and his rear deck. In those tight quarters, increased noise will be an inevitable incident even with cooperation between neighbors.
5.Loss of Privacy
This injury also will support the claim to standing. McGee, 62 Mass.App.Ct. at 931; Bertrand, 58 Mass.App.Ct. at 912; Ruggles, supra. The same cramped conditions will subtract from Van Buren’s privacy. His new neighbor and he would have both visual and aural access to each other. Their multiple side windows would lay about 10 feet apart and would have to be shaded to prevent invasive sight lines. The closeness might enable them to hear each other through open and perhaps even closed windows. Clear lines of sight and hearing would run from New Housing’s back yard and car port into Van Bureris closely adjoining back deck.
6.Loss of View and Aesthetics
This consideration also may go into the mix of interests contributing to standing. Tsagronis, 415 Mass. at 330 n.4; McGee, 62 Mass.App.Ct. at 931. Van Burén will lose the entirety of the view from his 12 south side windows. Concedely the view is an observation of an open lot and of South Boston street comer society. Those vistas can have their aesthetic values. And, undoubtedly, they supply more optical refreshment than a sheer wall of an adjoining house.
7.Density Considerations
Collectively these interests qualify as concerns of density or excessive density. One of the primary concerns of the Zoning Code is density. See Article 14, §1 (requiring minimum lot area); §3 (requiring minimum lot width); §4 (setting minimum lot frontage); Article 15, §1 (establishing a maximum ratio of floor to area); Article 17, §1 (requiring an area of usable open space to furnish off-street parking); and Article 18, §1 (requiring a sufficiently large front yard). The central concern of the ISD’s denial of a building Application was the multiple violations of density standards. The aggregate theme of density control expressed in numerous provisions of a zoning code presents an especially strong basis for a complainant’s standing. Bertrand, 58 Mass.App.Ct. at 912: “As confirmed by the testimony of the building inspector, the grounds for the plaintiffs’ objections related directly to the objectives of the density regulation at issue.” Here, as there, those objections have ample support in the uncontroverted factual materials, and entitle Van Burén to standing.
The Board’s Omission of Findings
The Boston Zoning Code, by Section 7-3 imposes three prerequisites for the grant of a variance (emphasis supplied):
(a) [t]hat there are special circumstances or conditions, JUly described in the findings, applying to the land or structure for which the variance is sought (such as, but not limited to, the exceptional narrowness, shallowness, or shape of the lot, or exceptional topographical condition thereof), which circumstances or conditions are peculiar to such land or structure but not the neighborhood, and that said circumstances or conditions are such that the application of the provisions of this Code would deprive the appellant of the reasonable use of such land or structure; and
(b) [t]hat for reasons of practical difficulty and demonstrable and substantial hardship JUly described in the findings, the granting of the variance is necessary for the reasonable use of the land or structure and that the variance as granted by the Board is the minimum variance that will accomplish this purpose; and
(c) [t]hat the granting of the variance will be in harmony with the general purposes and intent of this Code and will not be injurious to the neighborhood or otherwise detrimental to the public welfare.
In this case, the Board drafted the following clause: “The Board of Appeals finds that all of the following conditions are met.” It then inserted verbatim the language of subsections (a), (b), and (c) of Section 7-3 quoted above.
Two of those subsections explicitly, and the third one implicitly, command “fully described ... findings” of fact in support of a variance. The Board’s decision contains no findings of fact. Even as the Board was invoking these Code provisions, it was violating them. As Van Burén points out, under a long and steady line of precedents the grant of a variance without specific findings is void on its face. See Warren v. Zoning Board of Appeals of Amherst, 383 Mass. 1, 9-10 (1981) (the allowance of a variance without specific findings of the necessary conditions is invalid); McNeely v. Board of Appeals of Boston, 358 Mass. 94, 103 (1970) (the mere recital of statutory or code criteria is inadequate); Brackett v. Board of Appeal of Building Department of Boston, 311 Mass. 52, 54 (1942) (same); Prusik v. Board of Appeal of Boston, 262 Mass. 451, 457-58 (1928) (again); McCabe v. Board of Appeal of Arlington, 10 Mass.App.Ct. 934, 934 (1980) (failure to make findings under the statutory criteria relating to conditions of soil, topography, or shape is fatal to the variance); and Lynch v. Board of Appeal of Boston, 1 Mass.App.Ct. 353, 356 (1973) (specific findings are the “conditions precedent” to the grant of a variance).
In the earliest of the decisions involving the Boston Board’s predecessor under analogous legal standards, the Supreme Judicial Court made the point emphatically, Prusik v. Board of Appeal of Boston, 262 Mass. at 457-58:
The respondent board was required by [the then Boston Zoning Act] to make “a detailed record of all its proceedings, which record shall set forth the reasons for its decision,” and it has been held that *707 these words mean that there must be set forth in the record substantial facts which rightly can move an impartial mind acting judicially to the definite conclusion reached. This requirement is not satisfied by a mere repetition of the statutory words. Minute recitals may not be necessary, but there must be a definite statement of rational causes and motives founded upon adequate findings.
The command for specific findings, of course, is not a technicality. It promotes the rationality and integrity of decisions, and enables informed judicial review of their merits. The language of the Prusik court expects findings of “substantial facts which rightly can move an impartial mind acting judicially to the definite conclusion reached,” or a zoning board decision of quasi-adjudicatory quality. The goal is the reliable determination of facts and the accurate application of legal standards to those facts. In this instance the Board has provided no assurance of either objective.
The multiple warnings of the courts through more than 75 years have not substantially affected the quality of factfinding by the Board of Appeal of Boston. This case typifies a tradition of illusory findings wrapped in the general boilerplate of its Enabling Act and Code. It presents a decision without reasons or a decision based upon the wrong reasons in place of one “of rational causes and motives.” Decisions of this caliber proceed continuously into the Suffolk Superior Court. The decisions display no deliberation upon the legal merits of a variance application. They show no sign of any contribution from a legal mind. As long as they continue, the tradition of competent judicial review will invalidate them under the governing legal standards. The result will continue to be the waste of the public and private resources of the applicant builders and developers, the opposing neighbors and landowners, the Board itself, the City law department called upon to defend such decisions under judicial review, and the Superior and appellate courts. The hope for a remedy is that the Board will receive or use the services of knowledgeable City attorneys at the stage of original variance decision. That reform, at the least, would cure the chronic ill of blatantly inadequate factfinding. Perhaps the Board and the Cily government could deploy their legal resources to accomplish that improvement.[1]
Otherwise that institutional deficiency will continue to generate unreliable decisions and wasteful litigation. As the Supreme Judicial Court concluded 76 years ago in the Pruzik decision, 262 Mass. at 458:
There would be little left of a zoning law in respect to the rights of neighbors or of the public, if a decision like that made by the respondent board in the case at bar should be permitted to stand. We are of opinion that the Legislature could not have intended that the protection afforded by [the Boston Zoning Act] should be so illusory.
Viewed as a matter of either procedure or merits, the omission of the necessary findings alone requires annulment of the variance and summary judgment in favor of Van Burén.
The Ultimate Merits of the Variance
For completeness I will address the merits of the Board’s allowance of the variance. New Housing has requested summary judgment entirely upon contentions of Van Buren’s inadequate standing (Law Memorandum Sections III and IV). Van Burén has addressed one element of the merits of the requested variance: the implicit contention that the denial of it will inflict an unfair hardship on New Boston within the meaning of Code Section 7-3(b) [Van Burén Law Memorandum Section I.A.3].
In addition to the three criteria set by Code Section 7-3(a)-(c), the Boston Enabling Act, Section 9, establishes the general standard that a variance becomes appropriate only where
owing to conditions especially affecting [the] parcel or [the] building, but not affecting generally the zoning district in which it is located, a literal enforcement of the provision of [the] zoning regulation would involve substantial hardship to the appellant and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent and purpose of such zoning regulation, but not otherwise.
Statutory Section 9 provides general criteria. Code Section 7-3 narrows them to the three more specific requirements quoted above.
Several general principles apply to variance litigation. First, no applicant begins with a legal right to a variance; local boards should grant them “sparingly” so as not to riddle a zoning code with exceptions and thereby to destroy gradually its purposes and utility, and so as not to raise the risk of irrational and inconsistent treatment of similarly situated landowners. See, e.g., The 30 Joy Street Condominium Association v. Board of Appeal of Boston, 426 Mass. 485, 489 (1998); Broderick v. Board of Appeal of Boston, 361 Mass. 472, 479 (1972); and Danaskos v. Board of Appeal of Boston, 359 Mass. 55, 61 (1971). Second, the burden of proving the entitlement to a variance in the Superior Court falls upon the applicant even if it has prevailed at the local board. See Warren v. Zoning Board of Appeals of Amherst, 383 Mass. 1, 10 (1981); and Marr v. Back Bay Architectural Comm’n, 23 Mass.App.Ct. 679, 682 (1987).
In this instance New Housing sought multiple variances from dimensional violations of the Code itemized by the ISD: insufficient lot area; insufficient lot width; insufficient lot frontage; insufficient usable open space (for off-street parking); and insufficient front yard. Impliedly (for lack of better information through specific findings and reasoning), the Board awarded variances under Code Section 7-3(a) authorizing grounds “such as, but not limited to, the exceptional narrowness, shallowness or shape of the lot, or exceptional topographical *708 conditions thereof . . . peculiar to [the] land . . . but not the neighborhood . . . [and] depriving] the appellant of the reasonable use of [the] land . . .”
First, from the undisputed facts, no issue of topography is present. Further, the “exceptional narrowness, shallowness or shape of the lot” is not peculiar to 149 D Street and not to the neighborhood. It appears to be an undersized rectangular lot common to the neighborhood. That characteristic would seem to remove it literally from the benefit of Section 7-3(a).
More fundamentally, the case law construing and applying Enabling Act Section 9 has equated its general terms with the more specific ones of present G.L.c. 40A, §10, governing variances in all other municipalities. Section 10 (like antecedent c. 40A, §15) requires variances to derive from special “circumstances relating to the soil conditions, shape, or topography of [the] land.” See DiCicco v. Berwick, 27 Mass.App.Ct. 312, 314-15 (1989) (holding that, under the Boston Enabling Act and Code, variances will normally not be “available to remedy deficiencies in frontage and area” in conformance with the decisional law of c. 40A, §10 and former c. 40A, §15); and Feldman v. Board of Appeal of Boston, 29 Mass.App.Ct. 296, 297 (1990) (same).
The precedents have created the rule that inadequate lot dimensions, such as depth, width, area, and especially frontage, do not qualify for variances as circumstances of “shape.” The concept of shape is distinct from the concept of size. Shape will mean a circumstance of “odd shape” (such as a lot configured as pork chop with an abnormally small frontage). General problems of dimensions or size do not otherwise result from the shape of a lot. Whelan v. Zoning Board of Appeals of Norfolk, 430 Mass. 1009, 1009 (2000) (inadequate frontage); Tsagoonis v. Board of Appeals of Wareham, 415 Mass. 329, 332 n.6 (cases collected) (1993) (inadequate frontage); Warren v. Zoning Board of Appeals of Amherst, 383 Mass. 1, 11 (1981) (frontage); Bertrand v. Board of Appeals of Bourne, 58 Mass.App.Ct. 912, 912 (2003) (area); Feldman v. Board of Appeal of Boston, 29 Mass.App.Ct. 296, 297-98 (1990) (frontage); Mitchell v. Board of Appeals of Revere, 27 Mass.App.Ct. 1119, 1120 (1989) (area); and Arrigo v. Planning Board of Franklin, 12 Mass.App.Ct. 802, 804 (1981) (frontage).
Since New Boston’s lot at 149 D Street constitutes a regular rectangular shape and since it presents only problems of size and not shape, it is not eligible for a variance on the merits of its application. Nor does any “substantial hardship” materialize under Section 7-3 (b) of the Code. The City continues to own the land. New Housing confronts the disappointment of a failed request for a variance. The disappointment is not a legally recognized “hardship”; no applicant holds a right to a variance. Whelan, 430 Mass. at 1009, and cases cited.
Special Considerations
New Housing submits one novel argument. It points out (without dispute) that the developer of the four row houses from whom Van Burén purchased his unit received a variance of the kind now sought by it. Those adjoining four rectangular lots were undersized for their townhouses. The Board granted the variances. Van Burén bought one, and now benefits from a decision similar to the one he now opposes. (We do not know whether any neighbor challenged the variances achieved for the four preceding houses; or brought that challenge as far as the courts.) “Because he is a direct beneficiary of a similar variance, he does not have a legitimate interest in protecting the integrity of the applicable zoning scheme and he has no legitimate claim that the law shall be strictly enforced so as to deprive the owner of an adjoining lot of the same privilege which he enjoys.” (New Housing Law Memorandum at Section IV, p. 17.)
The rationale resembles an argument of estoppel: The beneficiary of a prior variance cannot challenge a subsequent one of the same nature in his neighborhood. However, aside from its initial equitable ring, the argument has no support from zoning law authority; nor from deeper logic. As a matter of precedent, “it does not matter that the plaintiffs own use is similarly nonconforming.” Reynolds v. Board of Appeal of Springfield & others, 335, Mass. 464, 470 (1957). Logically, as this case illustrates, precisely because variances have arisen from the anti-density regulation in a neighborhood zone, they should stop at some reasonable point so as to prevent the veiy congestion forbidden by the zoning scheme. Otherwise the exceptions will swallow the rule and destroy the zoning purpose. Here, the allowance of four townhouses upon four undersized adjacent lots renders all the more desirable the maintenance of the openness of the fifth undersized lot for the preservation of light, air, visibility, parking spaces, and whatever other amenities a cooperative community may introduce on that site.
Finally, while the Board did not furnish any of the findings required by zoning law for its variance decision, it did observe that New Housing sought the variance as part of the City administration’s pursuit of increased affordable home ownership in the South Boston community. That goal may be commendable. However, it is not a recognized ground for a variance. As the precedents emphasize, a zoning system is a regime of legal standards, not of administrative policy preferences.
Conclusion
Mr. Van Burén has standing. The variance allowed by the Board is void for lack of the required findings of fact. Further, the merits of the variance lack any discernible support in the undisputed facts and applicable law of the case.

Here, ironically, the variance applicant New Housing is functioning as an agent of a City-sponsored program. The Board’s performance has effectively wasted substantial time, effort, and money of that program.