FREDERICK H. FEDERMAN & another[1] vs. BOARD OF
APPEALS OF MARBLEHEAD; ERNEST A. SICILIANO & others,
interveners.[2]

No. 92-P-227.

Suffolk. October 7, 1993 - January 10, 1994.

Present: KASS, JACOBS, & IRELAND, JJ.

*Practice, Civil*, Interlocutory appeal, Zoning appeal. *Zoning*, Special per-
mit; Appeal; Board of appeals: decision.

Upon review under G. L. c. 40A, § 17, of the denial by a zoning board of
appeals of a special permit exemption from certain dimensional require-
ments in the local zoning by-law, action by a Land Court judge in con-
cluding that the board's decision disclosed error of law on its face and
remanding the case to the board to reconsider the application for the
special permit was interlocutory, and was not ripe for review by this
court. [729-730]
A Land Court judge correctly ruled that a zoning board of appeals had
acted on legally untenable grounds in denying a special permit exemp-
tion from certain dimensional requirements in the local zoning by-law
and, in remanding the matter to the board, the judge properly focused
on the by-law's criteria for deviation from dimensional requirements,
namely, appropriate location, adverse effect on neighborhood, potential
nuisance or hazard, and adequacy of facilities for proposed use. [730-
733]

CIVIL ACTION commenced in the Land Court Department
on December 14, 1989.

The case was heard by *Marilyn M. Sullivan*, J., on a
statement of agreed facts.

*Diane C. Tillotson* for the interveners.
*Webb F. Primason* for the plaintiffs.

[1]Kelie A. Federman.
[2]Seven persons who own adjoining property are in the case as
interveners and, in fact, prosecuted the appeal. The board of appeals has
not submitted a brief.

KASS, J. Upon review under G. L. c. 40A, § 17, of denial by the board of appeals of Marblehead of a special permit exemption from certain dimensional requirements in the Marblehead zoning by-law, a judge of the Land Court concluded that the board's decision disclosed error of law on its face and remanded the case to the board for further action. That action by its nature was interlocutory, and the appeal is to be dismissed because not ripe for our review. Much of what the Land Court judge had to say in her decision, however, will bear on the case when it is considered again by the board, and, in hope that it will assist the parties on remand, we comment on some of the issues in that decision which the parties are contesting.

We set the scene, based on stipulations of the parties and findings by the Land Court judge. The Federmans own a lot off Casino Road in Marblehead containing, according to the assessors, 9,220 square feet[3] and 75 feet of frontage on a private way that runs from Casino Road and to which the public has acquired access. Since 1950, the zoning by-law of Marblehead has prescribed for the single-family zoning district in which the locus is situated a minimum lot size of 10,000 square feet and minimum frontage of 100 feet. Other pertinent dimensional requirements applicable to the locus are a side yard minimum of 15 feet and a height ceiling of 35 feet from the lower of the original grade or finished grade.

Under § 1.5 of the Marblehead zoning by-law, the board of appeals has authority to issue a special permit that grants exceptions to the dimensional requirements. Before granting such a special permit, the board is to consider: (a) whether "the specific site is an appropriate location" for the use and structure proposed; (b) whether the use as developed will adversely affect the neighborhood; (c) whether the proposed use constitutes a nuisance or serious hazard to vehicles or pedestrians; and (d) whether there are "[a]dequate and appropriate facilities . . . provided for the proper operation of the proposed use." Marblehead zoning by-law § 1.5B.

---

[3]A plan prepared for the Federmans in 1989 shows the lot to contain 9,039 square feet. Nothing turns on the difference.

A circular private way used by the public, unnamed but connected to Casino Road, cuts across the Federmans' lot somewhat below its waist, with the consequence that a structure needs to be located above or below that way. The Federmans proposed that their house be built northerly of the way. Throughout the area, the Clifton Heights section of Marblehead, in which the Federman lot is located, there are outcroppings of ledge. Many of the lots in the neighborhood are smaller than the locus. At the least, the Federman proposal (as shown on a plan revised September 18, 1989) for a single-family house requires an exception from the minimum lot size, the mimimum frontage, and the westerly sideline setback, which the site plan shows as 8 feet. Less clear from that plan is why the board thought the Federman proposal requires an exception from the 20-foot front setback (i.e., from the way) requirement. The board denied a special permit for reasons which the trial judge ruled were not tenable as matter of law. We shall return to those reasons in the discussion under topic heading number 2 of this opinion.

1. *Ripeness for appellate review.* In her decision, the judge analyzed the board's errors of law and remanded the case with an order that the board was to reconsider the application for a special permit "in light of the findings of fact and rulings of law made by [her] in [her] judgment." An order of remand, by its nature, is generally not final, particularly when the operative verb in the order has been "reconsider." The trial judge's order is not final but, rather, interlocutory because the administrative tribunal has choices to make about the result, in nuance and fundamental conclusion. An appeal from an interlocutory order is an imposition on the time and resources of the parties and the judiciary because the questions formed as a consequence of the interlocutory order may vanish or change as a result of the administrative agency's action after remand. *Roberts-Haverhill Assocs.* v. *City Council of Haverhill,* 2 Mass. App. Ct. 715, 719-720 (1974). *J. & C. Homes, Inc.* v. *Planning Bd. of Groton,* 8 Mass. App. Ct. 123, 125 (1979). *Geryk* v. *Zoning Appeals Bd. of Easthampton,* 8 Mass. App. Ct. 683, 685 (1979).

*Lovaco, Inc.* v. *Zoning Bd. of Appeals of Attleboro,* 23 Mass. App. Ct. 239, 244 (1986). See *Carnute's Case,* 10 Mass. App. Ct. 814 (1980).

If an order of remand allows the administrative tribunal no leeway, the order takes on the character of finality, and an appeal is in order. For example: in *Geryk* v. *Zoning Appeals Bd. of Easthampton, supra,* the judge ordered the local board to grant a variance; in *Smalley* v. *Planning Bd. of Harwich,* 10 Mass. App. Ct. 599, 605 (1980), the judge ordered the planning board to place an endorsement on a plan, pursuant to G. L. c. 41, § 81P, that subdivision approval was not required; in *K. Hovnanian at Taunton, Inc.* v. *Planning Bd. of Taunton,* 32 Mass. App. Ct. 480, 480-481 (1992), the order of remand left the planning board no alternative to approving a definitive subdivision plan. In all those cases we took jurisdiction of the appeal because the land use agencies in each instance had no running room whatever, and, in consequence, the questions in the case were mature for purposes of appellate review. See also *J.C. Hillary's* v. *Massachusetts Commn. Against Discrimination,* 27 Mass. App. Ct. 204, 206 n.4 (1989), and *Northeast Metropolitan Regional Vocational Sch. Dist. Sch. Comm.* v. *Massachusetts Commn. Against Discrimination,* 31 Mass. App. Ct. 84 (1991), in which we treated a remand to the commission as a final judgment.

Here, the board may issue a special permit, may not issue a special permit, or may issue a special permit subject to conditions. In that inchoate state, the appeal is to be dismissed. As indicated, we will attempt to guide future proceedings with discussion of questions which have arisen, have been briefed, and are highly likely to recur when the case returns to the board.

2. *Whether the board's decision was on legally tenable grounds.* Zoning boards are not bound to grant a special permit. Their power to grant or deny such permits is invested with discretion, and a decision of a local board will not be disturbed unless it is based on an untenable ground or is unreasonable, whimsical, or capricious — that is to say, arbi-

trary. *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277 (1969). *S. Kemble Fischer Realty Trust* v. *Board of Appeals of Concord*, 9 Mass. App. Ct. 477, 481, cert. denied, 449 U.S. 1011 (1980). *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 105 & n. 11 (1984).

In explanation of its action, the board found that the buildable portion of the locus "is substantially less than 9,000 square feet owing to the private right of way which bisects it." The board also found that the proposed structure would be built on ledge, placing it higher than the surrounding structures. In summation the board "found" that "the site is not an appropriate one for the proposed structure, and that the proposed structure would be detrimental to and have an adverse effect upon the neighborhood"; those, however, are not findings but mere mouthings of the statutory and by-law criteria. *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 298 (1972).

The Land Court judge correctly ruled that the board erred as matter of law in assuming that the right of way in some fashion reduced the lot size. A primary purpose of requiring minimum lot sizes is assuring open space to a neighborhood, and that objective was not compromised by the circumstance that part of the open space of the locus was southerly of the right of way. Had the proposed house been athwart the right of way, the same deviations as to minimum area, minimum frontage, and minimum side yard would have pertained. The circular road passes through five lots (including the locus), and houses have been built on three of them. Irrespective of the right-of-way, the placement of the proposed house on the locus, the judge found, was its natural location, dictated by the width of the lot and the best setting for an ocean view. In a land use context, the passage of the right of way across the locus is an irrelevancy and, hence, not a tenable ground for deciding whether the special permit applied for ought to be granted.

As to the proposed house being higher than those of the objecting neighbors, that was, as the judge observed, not a

consequence of the design of the house, but of the natural topography of the area, which caused the locus to be at a relative high point in terrain characterized by hills, dales, and the presence of ledge. The design of the proposed Federman house placed it safely within the 35-foot limit provided for in the zoning by-law. Nature, not the Federmans' plans, would cause any structure on the locus to be disagreeable to certain neighbors because it would interfere with their sight lines to the ocean. The Marblehead by-law, in § 1.1B, purposes promotion of the health, safety, convenience, and general welfare of its inhabitants, a conventional statement of the objective of zoning. See *Simeone Stone Corp.* v. *Oliva*, 350 Mass. 31, 37 (1965). No more than any zoning code, the Marblehead by-law does not protect a particular property owner's view, except as an incidental consequence of legislating density or height of structure. The height of the structure, as we have seen, conforms to the zoning regulation, and the board did not suggest, nor rationally could it, that the proposed structure unreasonably crowds the site.

The Land Court judge correctly focused on the criteria established by Marblehead zoning by-law § 1.5B for deviation from dimensional requirements, namely, appropriate location, adverse effect on neighborhood, potential nuisance or hazard, and adequacy of facilities for proposed use. There was no suggestion of adverse environmental or traffic effect as there was, for example, in *S. Volpe & Co.* v. *Board of Appeals of Wareham*, 4 Mass. App. Ct. 357 (1976), and *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 487-488 (1979). Compare *Mahoney* v. *Board of Appeals of Winchester*, 344 Mass. 598, 601-602 (1962), in which the court characterized as arbitrary a denial of a special permit based on increased traffic when there was no showing that the increased traffic would be consequential. See *Cohen* v. *Zoning Bd. of Appeals of Plymouth, ante* 619 (1993). No intervener (nor the board) has suggested a question of nuisance, nor has it been urged that the facilities for the proposed use were deficient. The district

was zoned for single-family houses, and single-family use, therefore, must perforce be appropriate for a lot that in terms of size, shape, and physical features is characteristic of many in the Clifton Heights section. This leaves only the test of adverse effect on the neighborhood to consider. Other than that empty lots are generally preferred by abutters to built-on lots, it is difficult to articulate what the adverse effect might be. None of the reasons stated by the board for denying the special permit spoke to the lot size, frontage, and side setback deviations sought. We think the Land Court judge was right in directing the attention of the board to those dimensional deviations and away from the legally immaterial issues of the right-of-way and the relative elevation of the locus.

*Appeal dismissed.*