Boutcher v. Sunoco                      CV-02-204-JD  04/23/03

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Nancy Boutcher and Peter Boutcher

        v.                              Civil No. 02-204-JD
                                        Opinion No. 2003 DNH 068
Sunoco, Inc. (R & M) et al.


                            O R D E R


    The plaintiffs, Nancy and Peter Boutcher, bring suit against
the defendant, Sunoco, Inc., (R & M) ("Sunoco"), a Pennsylvania
corporation, for injuries sustained when Mrs. Boutcher slipped
and fell on the premises of a Sunoco-owned gas station in
Haverhill, Massachusetts.  Mr. and Mrs. Boutcher are residents of
New Hampshire.  The defendant moves for summary judgment
(document no. 36) to which the plaintiffs object (document no.
40).  The plaintiffs move for summary judgment (document no. 37),
to which the defendant objects (document no. 39).


                           Background

    Mrs. Boutcher arrived at the defendant's self-service gas
station located at 790 River Road in Haverhill, Massachusetts,
some time between 2:30 and 2:45 on the afternoon of January 31,
2000.  She set a gas pump to automatically fill her car and
looked around for a squeegee to clean her windows.  The nearest

squeegee was several yards away.  On her way back to her car, Mrs. Boutcher stepped over the gas hose and into a puddle.  She apparently lost her footing on an icy surface in or around the puddle, and fell to the ground, injuring her face and left knee.  She made her way into the convenience store on the premises, where emergency services were notified.  An ambulance soon arrived and took Mrs. Boutcher to a local hospital where she received treatment.

Approximately an inch of frozen precipitation in the form of snow, ice, and hail had fallen in Haverhill early in the morning of January 31, 2000.  That precipitation changed to rain which ended around 9:30 a.m., after about a third of an inch had fallen.  By the time Mrs. Boutcher arrived at the gas station, the sky was partly cloudy and there was no precipitation.  The high temperature in Haverhill that day was forty-one degrees Fahrenheit, although the exact temperature at the time and place of the incident is not known.  No significant precipitation had fallen in Haverhill during the preceding five days, although as much as two inches of snow may have remained on exposed, untreated, outdoor surfaces in the Haverhill area due to snowfalls earlier that winter.

2

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255. "On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). "[A]n absence of evidence on a critical issue weighs against the party . . . who would bear the burden of proof on that issue at trial." Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001). In considering "cross-motions for summary judgment, the court must consider each motion separately, drawing inferences

against each movant in turn." <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997).


Discussion

The parties agree, and the applicable choice of law rules dictate, that Massachusetts negligence law governs this case.[1] Under Massachusetts law, a defendant is liable to a plaintiff for negligence if the plaintiff can establish that the defendant owed the plaintiff a legal duty, and that the defendant breached that duty, thereby proximately causing injury to the plaintiff. <u>See, e.g.</u>, <u>Davis v. Westwood Group</u>, 652 N.E.2d 567, 569 (Mass. 1995). "The duty owed by a property owner to someone lawfully on the owner's premises is one of reasonable care in the circumstances." <u>Sullivan v. Town of Brookline</u>, 626 N.E.2d 870, 872 (Mass. 1994); <u>see also</u> <u>Mounsey v. Ellard</u>, 297 N.E.2d 43, 51-52 (Mass. 1973).[2]

---

[1]In diversity cases, federal courts apply the forum state's choice of law rules. <u>See</u> <u>Auto Eur., L.L.C. v. Conn. Indem. Co.</u>, 321 F.3d 60, 64 (1st Cir. 2003). In this action, where the liability alleged is based on an owner-occupier's duty to keep a business premises reasonably safe, New Hampshire's choice of law rules dictate that the law of the locus of the property, in this case, Massachusetts, should be applied. <u>See</u> <u>Barrett v. Foster Grant Co.</u>, 450 F.2d 1146 (1st Cir. 1971) (citing <u>Clark v. Clark</u>, 107 N.H. 351 (1966)).

[2]Thirty years ago, the Supreme Judicial Court of Massachusetts abolished the common law distinction between licensees and invitees and replaced it with the current "common

"The duty of reasonable care 'does not make landowners and occupiers insurers of their property nor does it impose unreasonable maintenance burdens.'" Aylward v. McCloskey, 587 N.E.2d 228, 230 (Mass. 1992) (quoting Mounsey, 297 N.E.2d at 53). That is to say, landowners are "'not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate.'" Toubiana v. Priestly, 520 N.E.2d 1307 at 1310 (Mass. 1988) (quoting Gadowski v. Union Oil Co., 326 F.2d 524, 525 (1st Cir. 1964)).

I.  Sunoco's Motion for Summary Judgment

Sunoco accurately contends that, in Massachusetts, a landowner's duty to one lawfully on his premises "is not violated by a failure to remove a natural accumulation of snow or ice." Sullivan, 626 N.E.2d at 872. "[U]nder Massachusetts law, landowners are liable only for injuries caused by defects existing on their property and . . . the law does not regard the natural accumulation of snow and ice as an actionable property defect. . . ." Alyward, 587 N.E.2d at 230 (citing Athas v. United States, 904 F.2d 79, 82 (1st Cir. 1990) (applying

duty of reasonable care . . . owe[d] to all lawful visitors." Mounsey, 297 N.E.2d at 51.

5

Massachusetts law)).[3]   No duty would attach even if a landowner removed only a portion of naturally accumulated ice or snow from its premises and left the remainder.  See Sullivan, 626 N.E.2d at 872 ("Liability does not attach, in circumstances like those presented here, when a property owner removes a portion of an accumulation of snow or ice and a person is injured by slipping and falling on the remainder because the snow or ice remains as a natural accumulation.").  Landowners may be held liable only "where some act or failure to act has changed the condition of naturally accumulated snow and ice, and the elements alone or in connection with the land become a hazard to lawful visitors . . . ."  Aylward, 587 N.E.2d at 230 n.3; see also Athas, 904 F.2d at 82.

In this case, however, a material dispute remains as to both the source of the ice on which Mrs. Boutcher slipped (i.e. whether or not the ice at the gas pump accumulated there naturally), and whether such ice remained in a natural condition. Even the defendant notes that "[t]he station was . . . subject to

_____

[3]The rationale underlying this rule stems from Massachusetts's climate, in which "a number of conditions might exist which within a very short time could cause the formation of ice . . . without fault of the owner and without reasonable opportunity on his part to remove it or warn against it or even to ascertain its presence.'"  Barry v. Beverly Enter.-Mass., Inc., 638 N.E.2d 26, 29 (Mass. 1994) (quoting Aylward, 587 N.E.2d at 230 (further internal citations omitted)).

snow, ice, water, salt and other materials brought in from the cars of its patrons. . . ." Def.'s Obj. at 7.[4] Furthermore, because of the substantial pedestrian and automobile traffic around the gas pumps, any naturally accumulated snow or ice could have been transformed such that it no longer remained in its natural state. See Thornton v. First Nat'l Stores, Inc., 163 N.E.2d 264, 265 (Mass. 1960) (thick ice frozen solid to steps and potted by foot traffic unnatural); Jakobsen v. Mass. Port Auth., 520 F.2d 810, 817 (1st Cir. 1975) ("The fact that the snow and ice may have accumulated naturally . . . does not preclude a finding of negligence; the jury might have inferred that the slick condition of the packed ice resulted from trodding by a constant stream of people. . . ."). Whether the ice upon which Mrs. Boutcher slipped constituted a natural accumulation is a disputed factual issue for the jury to resolve. See id.; see also Sullivan, 626 N.E.2d at 872 n.2.

The defendant also seeks summary judgment on the basis that it is not liable for Mrs. Boutcher's willful encounter with the obviously dangerous icy puddle. Under Massachusetts law,

---

[4]Gail Geiger, the Assistant Manger of the gas station at the time of the incident, agreed that because a canopy covered the pump area and blocked some precipitation, most of what had to be cleared from walkways was brought in by cars coming off the highway. See Geiger Dep. at 58-59.

landowners do not owe a duty of care to warn a lawful visitor of obviously dangerous conditions.  See O'Sullivan v. Shaw, 726 N.E.2d 951, 957 (Mass. 2000).  The standard for determining the obviousness of a danger is "whether the dangerous condition complained of would be obvious to a person of average intelligence, that is, a visitor with ordinary perception and judgment exercising reasonable care for his own safety."  See id. Mrs. Boutcher contends that the ice in the puddle was a "trap" concealed by a layer of water and that there is nothing obviously dangerous about a puddle on a day where the ambient air temperature is well above freezing.  See Pl.'s Obj. at 9. Material issues as to the obviousness of the danger posed by the conditions near the gas pump remain in dispute and preclude summary judgment on that basis.

II.  Plaintiffs' Motion for Summary Judgment

The plaintiffs seek summary judgment on the ground that they have offered sufficient evidence to establish liability in that Sunoco failed to maintain the premises in a reasonably safe condition.  As discussed above, Mrs. Boutcher's negligence claim is governed by the standard for landowner liability requiring "reasonable care in the circumstances."  Sullivan, 626 N.E.2d at 872; see also Aylward, 587 N.E.2d at 230.  The relevant

8

circumstances "includ[e] the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." Mounsey, 297 N.E.2d at 52. The plaintiffs assert that "Sunoco's negligence is proven by the fact that . . . Mrs. Boutcher encountered ice concealed in a puddle . . . at the . . . self-service gas pumps." Pl.'s Mot. at 6. In another case involving a slip and fall on an icy puddle at a business premises, the Supreme Judicial Court held that "a defendant who did not have a reasonable opportunity to discover and remedy a hazardous condition . . . so that it could not reasonably remove, or warn the plaintiff of, the danger--cannot be found to have violated its duty of care." Barry, 638 N.E.2d at 28 (citing Oliveri v. Mass. Bay Trans. Auth., 292 N.E.2d 863, 864-65 (Mass. 1973)). Whether Sunoco should reasonably have been aware of the icy puddle at Mrs. Boutcher's gas pump, and what remedial measures or warnings, if any, may have been sufficient to satisfy its duty of care, remain in dispute.

After reviewing both parties' motions and supporting evidence in light of the appropriate standards of review, substantial material facts remain in dispute precluding summary judgment for each party. Therefore, the motions for summary judgment are denied.

9

<u>Conclusion</u>

For the foregoing reasons both the plaintiffs' (document no. 37) and the defendant's (document no. 36) motions for summary judgment are denied.

In light of this order, and in view of the unusually contentious nature of the discovery process, it would behoove the parties to engage in a good faith effort to resolve this dispute either directly or by mediation before additional time and resources are expended in trial preparation.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

April 23, 2003

cc:  Edwinna C. Vanderzanden, Esquire
     John B. Reilly, Esquire
     Michael P. Rainboth, Esquire