Cratsley, J.
This action is an appeal by the plaintiff, MBTA Employees Credit Union (“Credit Union”), pursuant to Chapter 665 of the Enabling Acts of 1956, as amended by Chapter 461 of 1994, from a decision of the City of Boston Board of Appeal (“Board”) granting a zoning variance to defendant Linda J. Gillis (“Gillis”). A trial de novo was held on June 1, 2, 3, and 4, 2004, during which there was testimony from witnesses, a view taken by the Court, and multiple exhibits admitted into evidence. For the reasons set forth below, the plaintiffs complaint is ordered DISMISSED.
FINDINGS OF FACT
Based on all the credible evidence and reasonable inferences drawn from the evidence, this Court finds the following facts.
The defendant, Linda Gillis, owns the land and building at 10 West Fifth Street, also known as 1-9 A Street, in the South Boston neighborhood of Boston. The land is comprised of two conjoined rectangular lots, one larger than the other, which encompass approximately 11,130 square feet on the corners of West Fifth Street, A Street, and Gold Street. There are curb cuts from the property onto both West Fifth Street and Gold Street. Gold Street is an approximately thirteen-foot-wide dead-end public way. Both West Fifth Street and A Street are busy two-lane roads. There is currently a two-story masonry building on the property that previously housed a commercial statuary business. The premises are not currently used for any commercial or industrial activities. The land lies entirely within an M-1 (Industrial and Restricted Manufacturing) Use Zoning District which prohibits any residential structures without a variance from the City of Boston (“City"). Defendant Gillis wishes to demolish the existing building and construct a five-unit residential townhouse and parking on the premises. The proposed relief would grant a variance allowing the residential townhouse to be constructed.
The plaintiff, MBTA Employees Credit Union, owns land and a building at 147 West Fourth Street in South Boston that is directly across Gold Street from 10 West Fifth Street. There are two curb cuts from the property, one onto West Fourth Street, and the other onto Gold Street. Approximately half of 147 West Fourth Street is comprised of the plaintiffs large two-story masonry building, open to the public, from which the Credit Union conducts its business. The other half of the property is used as a parking lot for the Credit Union’s customers. There is a sign with an electronic message board on the southwestern corner of the property abutting Gold Street and A Street. The Credit Union additionally leases a small parcel of land adjoining 147 West Fourth Street for additional parking.
On November 1, 2002, Gillis applied to the City’s Inspectional Services Department (“ISD”) for a building permit to construct the five-unit townhouse at 10 West Fifth Street. On December 10, 2002, the ISD issued a decision denying the application for a permit. Gillis appealed the decision to the City’s Board of Appeal (“Board”) requesting a use variance that would *233 allow her to build the residential structure. A public hearing was held on January 28, 2003, and on February 25, 2003, the Board granted the variance. The plaintiff then filed this action in Superior Court asking that the Board’s decision be annulled.
DISCUSSION
1. NOTICE
The first issue to address is the Credit Union’s claim of lack of notice. The Credit Union asserts that the Board lacks jurisdiction to grant a variance for 10 West Fifth Street because the Board failed to notify the Credit Union through the mail of the time and place of the Board’s meeting pursuant to Section 8 of Chapter 665 of the Acts of 1956, as amended through 2001 (“Enabling Act”).[2]
Several appellate level decisions have discussed the issue of defective statutory notice to abutters of zoning board of appeals meetings. Notably our Supreme Judicial Court has stated that, “[w]hat constitutes reasonable notice depends upon the facts and circumstances of each case.” Rousseau v. Bldg. Inspector of Framingham, 349 Mass. 31, 37 (1965). Although notice may not meet the rigid statutory requirements, it still may be adequate:
Not every decision of an administrative board need be invalidated for the board’s failure to comply precisely with each of the notice provisions [in] a statute ... To rule that a board of appeals loses jurisdiction to act in every such . . . instance would be to rule that every successful petitioner before the board, who has no control over the manner in which the board performs is duties . . . would remain indefinitely subject to attack . . .
Kasper v. Bd. of Appeals of Watertown, 3 Mass.App.Ct. 251, 256 (1975).
For instance, a plaintiff who learned of a public hearing twelve days before it occurred from a newspaper announcement, but who was never mailed the statutorily required notice by the locality, was held to have received reasonable notice of the hearing. Id. at 257.
The Credit Union claims that it never received notice in the mail of the Board’s January 28, 2003 meeting regarding the application for a use variance for 10 West Fifth Street. The Credit Union’s CEO, Philip O’Connor, testified that he never saw, nor did any of his employees remember seeing, a notice from the Board regarding the hearing. O’Connor also claimed that he had no knowledge of the meeting from any other source. As a result of the lack of notice, the Credit Union claims that it was prejudiced by being unable to present an opposition to the West Fifth Street project (“the project”).
This Court believes, and so finds, that proper notice was given to the Credit Union about the Board’s January 28, 2003 meeting. Furthermore, this Court finds that the Credit Union was not prejudiced. Stephanie Hanes, the head clerk of the City of Boston Zoning Board of Appeal and the person who is responsible for keeping and maintaining the records of the Board, testified that she reviewed the file (Exhibit 9) of the West Fifth Street project and found no inconsistencies with the Board’s normal procedure for notifying abutters of an upcoming meeting. Hanes testified that from her review of the file she could say that on January 2, 2003, the Credit Union was mailed two notices regarding the Board’s meeting. She could also tell from the file that neither of those notices was returned marked “undeliverable” by the post office. Copies of the mailing labels used and a sample of an “undeliverable” notice were included in Exhibit 9. This Court believes, and so finds, that the Board acted properly pursuant to Section 8 of the Enabling Act and that the Credit Union was given proper notice of the meeting by the City of Boston. See Bonan v. Boston, 398 Mass. 315, 321 (1986) (public officials are benefited with a presumption of proper conduct).
Even if the Credit Union failed to receive the mailed notices, which I do not believe was the case here, there were other opportunities for the Credit Union to receive notice of the meeting. First, notice of the meeting was published in the Boston Herald, a local newspaper with wide circulation within the City. Second, other commercial neighbors, both of the Credit Union and 10 West Fifth Street, were aware of the meeting as evidenced by the numerous letters to the Board regarding the West Fifth Street project (Exhibit 9). The Credit Union could have inquired of its neighbors to determine the status of the recently sold abutting property. Lastly, Gillis canvassed the neighborhood on or about January 10, 2003, with fliers announcing a private “abutters meeting” to discuss the proposed project at 10 West Fifth Street. The fliers specifically stated that “[t]he applicant is scheduled to appear before the Zoning Board of Appeals on Tuesday January 28th” (Exhibit 35). Gillis testified that she “definitely” dropped off a flier at the Credit Union.
Based upon the mailing of actual notice by the Board as well as the ample opportunities for the Credit Union to receive notice of the Board’s meeting, this Court finds that notice was proper.
2. STANDING
The next issue to address is whether the Credit Union has standing in the Superior Court to challenge the Board’s decision. Section 11 of the Enabling Act provides that: “Any person aggrieved by a decision of . . . [the] board of appeal, whether or not previously a party to the proceeding, or any municipal board or officer, may appeal [to the courts].” Enabling Act, §11. Few appellate cases have addressed the issue of .standing for persons challenging Board of Appeals decisions under §11 of the Enabling Act. However, because the language of this section is identical to that of G.L.c. 40A, §17 in granting standing to any “persons aggrieved,” for cases outside Boston, the Appeals Court *234 has determined that it may look to cases outside Boston to determine the meaning of aggrieved status. Sherrill House, Inc. v. Bd. of Appeal of Boston, 19 Mass.App.Ct. 274, 275 (1985).
A plaintiff is a “person aggrieved” if he suffers some injury to his legal rights. Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 720 (1996). The alleged injury must be more than speculative, but the term “person aggrieved” should not be read narrowly. Tsagronis v. Bd. of Appeals of Wareham, 415 Mass. 329, 335 (1993) (Abrams, J., dissenting); Marotta v. Bd. of Appeals of Revere, 336 Mass. 199, 204 (1957). The plaintiff bears the burden of demonstrating the requisite standing as one of a limited class who is entitled to challenge the Board’s exercise of discretion. Barvenik v. Alderman of Newton, 33 Mass.App.Ct. 129, 131-32 (1992). To demonstrate that one is a member of the limited class, “ [t]he claimed injury or loss must be personal to the plaintiff, not merely reflective of the concerns of the community.” Denneny v. Zoning Bd. of Appeals of Seekonk, 59 Mass.App.Ct. 208, 211 (2003).
An abutter is entitled to a rebuttable presumption that he is a person aggrieved and may challenge a zoning board’s decision. Marashlian, 421 Mass, at 721. However, “(o]nce the abutter’s standing is challenged and evidence is offered to support the challenge, the presumption recedes and the burden of proof shifts to the abutter, who must come forth with specific facts to support his assertions of status of an aggrieved person.” Rattner v. Planning Bd. of W. Tisbury, 45 Mass.App.Ct. 8, 10 (1998). Thus, if standing is challenged, as here, the jurisdictional question is decided on “the basis of evidence with no benefit to the plaintiff from the presumption.” Barvenik, 33 Mass.App.Ct. at 131. Standing essentially becomes a question of fact for the trial judge to decide. See Marashlian, 421 Mass. at 721.
In this case the Credit Union maintains that it has standing in three specific ways: (1) the project will increase both vehicular and pedestrian traffic on Gold Street and affect the ability of the Credit Union’s customers to exit their parking lot; (2) the project will decrease the visibility of the Credit Union’s sign; and (3) new residents of the project may, at some time in the future, complain if the Credit Union were to expand its hours of operation. (Plaintiffs Post-Trial Brief at 6, 9; Defendant’s Post-Trial Brief at 12.) This Court will address each argument in turn.
First, the Credit Union claims that its customers will encounter increased pedestrian and vehicular traffic on Gold Street, making it difficult for them to exit the parking lot. The plaintiff presented evidence through Jennifer Conely, a traffic engineering expert, that many large vehicles currently have difficulty exiting the parking lot onto narrow Gold Street. She noted that these vehicles are forced to either drive over the curb or perform a multi-point turn. Additionally, testimony was given that when two vehicles traveling in opposite directions on Gold Street meet there typically is a “conflict” (the vehicles are unable to pass each other). Conely also testified that if the project were to be built, it would not be any harder than it currently is for large vehicles to exit the Credit Union’s parking lot than it is presently. Further, it was established during her cross examination that Conely did not conduct a study of the current parking in the area or of any possible effects that the project may have on that available parking.
Increased movement of traffic on a public road, standing alone, would usually not confer standing to a plaintiff. This is because of the inherent variability of traffic, the public nature of the roadway, and the general inability to assign any increase in traffic to a particular newly constructed project. If, however, the plaintiff were to demonstrate that the increased traffic resulted in a loss of public parking that was relied upon by the plaintiff, then standing could be conferred. Marashlian, 421 Mass. at 723. The Credit Union has not claimed a lack of parking or that the project will create competition for the plaintiffs parking spaces. In fact, Gillis’ plan for 10 West Fifth Street provides that she will include more than the minimum number of parking spaces required for the property.[3]
It should be noted that from the view I conducted I am of the opinion that drivers exiting the project will likely travel northwest on Gold Street away from the Credit Union. This is because Dorchester Avenue, Broadway, and other streets giving access to various parts of Boston are not located down Gold Street toward the Credit Union. In fact, Gold Street dead ends just past the Credit Union making it highly unlikely that any residents of 10 West Fifth Street would use that part of Gold Street. In any event, increased traffic on a public road, in this Court’s opinion, is not a private right. All persons using that public road will be harmed equally by any increase in traffic.
Furthermore, the Credit Union’s evidence that large vehicles have difficulty exiting the parking lot has no bearing on this case. Tbe Gillis project will not make it any harder for vehicles to exit the parking lot; the width of the street is controlled by the City. If 10 West Fifth Street were to be developed in a manner not requiring a variance, similar “conflicts” and multipoint turns would result. Accordingly, the plaintiff cannot establish standing due to any fear of increased traffic at their end of Gold Street.
Second, the Credit Union argues that the project will decrease the visibility of its sign. The sign reads “MBTA Employees Credit Union” and has a scrolling electronic message board whose message may be changed periodically (Exhibit 26). The plaintiff called William Fields, an architect, to testify about the sight lines of the sign. Fields testified that the view of the Credit Union sign would be obstructed to some extent *235 by the Gillis project for some drivers and pedestrians traveling on Dorchester Avenue.
This Court finds that the visibility of a commercial sign is not a private right. This issue is most analogous to the claim of loss of view. A change to an abutter’s view may constitute a specific legal injuiy only if the visual character of the neighborhood is protected by the zoning code itself. Monks v. Zoning Bd. of Appeal of Plymouth, 37 Mass.App.Ct. 685, 688 (1994). Zoning codes do not “protect a particular properly owner’s view.” Federman v. Bd. of Appeals of Marblehead, 35 Mass.App.Ct. 727, 732 (1994). Standing may also arise where the loss of view is so extreme as to have an impact upon the value of the abutter’s property. Tsagronis v. Bd. of Appeals of Wareham, 415 Mass. 329, 330 fn.4 (Abrams, J., dissenting). In this case the zoning code does not protect the Credit Union’s view, nor does the code specifically protect the public’s view of commercial signs posted on the Credit Union’s property. Additionally, there was no testimony that the lessened visibility of the sign would materially alter the value of the Credit Union’s property. Accordingly, the plaintiff cannot establish standing due to any decreased visibility of its sign.[4]
Lastly, the Credit Union claims that the future residents of 10 West Fifth Street may object to the future expansion of the Credit Union. CEO O’Connor testified that he feared the new residents might at some time in the future complain if the Credit Union were to seek a conditional use permit for future parking facilities at a yet unspecified location. The Appeals Court has written, “a plaintiff must establish — by direct facts and not speculative personal opinion— that his injuiy is special and different from the concerns of the rest of the community.” Barvenik v. Bd. of Alderman of Newton, 33 Mass.App.Ct. 129, 132 (1992). There was absolutely no evidence presented during this trial to prove that there will be objections from the new neighbors at 10 West Fifth Street to the expansion of the Credit Union’s hours and services. This threat of injuiy to the Credit Union is completely speculative and, as such, cannot confer standing. Denneny, 59 Mass.App.Ct. at 211-12.[5]
For all of the reasons discussed above, this Court finds that the plaintiff, the MBTA Employees Credit Union, does not have standing in the Superior Court to challenge the decision of the Boston Board of Appeals rendered in favor of the plaintiff on February 25, 2003. Therefore, this Court finds that the zoning variance granted to Linda Gillis on February 25, 2003 was lawful. The plaintiffs complaint is ordered dismissed.
ORDER
It is therefore ORDERED that as the plaintiff does not have standing, this complaint is DISMISSED.

“Said board of appeal shall . . . send notice, by mail, postage prepaid, at least twenty days prior to the hearing, to the appellant and to the owners of all property deemed by said board of appeal to be affected thereby, as they appear on the most recent local tax list, and to any person filing written request for notice of hearings.” Id.

Gillis’s plans indicate that she will create 10 parking spaces on the property (Exhibit 11).

During my view it was apparent to me that the proposed project at 10 West Fifth Street will have little impact on the visibility of the sign from Dorchester Avenue, a major street for traffic coming to the Credit Union. This is because my observations, as I walked the relevant streets, indicated that the sign will still be visible from several angles along Dorchester Avenue.

Whether the Credit Union actually chooses to expand, who will occupy 10 West Fifth Street, and how they will feel about any proposed expansions are all unresolved questions for the future.