Cratsley, J.
This action is an appeal by the plaintiffs, Mary McGee and Thomas F. Schiavoni (collectively “McGee/Schiavoni”), pursuant to Chapter 665 of the Enabling Acts of 1956 as amended by Chapter 461 of 1993, from a decision of the City of Boston Board of Appeal (“Board”) granting a variance to defendant William J. Verdi (“Verdi”). A trial de novo was held on October 15 and 16, 2001 during which there was testimony from witnesses, a view taken by the Court, and multiple exhibits admitted. For the reasons set forth below, the Board’s decision is affirmed.

FINDINGS OF FACT

Based on all the credible evidence and reasonable inferences drawn from that evidence, this Court finds the following facts.
Defendant, Verdi, owns the land and building at 53 Hull Street in the North End District of Boston. The building at 53 Hull Street consists of an occupied basement and three and one-half stories, and contains three residential apartments. Verdi occupies two of the apartments which consist of the second, third and half-fourth floors. Verdi rents out one apartment comprised of the basement and first floor. The building occupies nearly all of a trapezoidal lot, with the excep *533 tion of a small triangular section at the rear of the lot that can not be built upon because it is not accessible by construction equipment. The lot contains 581 square feet of which the building footprint is approximately 530 square feet. The legal occupancy of the premises is three residential units. The front of the building has a grade change of two and half feet over a distance of twenty feet. The building was constructed with a highly pitched fourth floor and roof which resulted in limited space on this floor. The largest of the three units contains approximately 640 square feet on two floors of the property. The smallest of the units is approximately 460 square feet. The proposed relief would increase the total square footage in order for Verdi to have a bigger unit for himself.
Plaintiffs, McGee/Schiavoni, own the land and building at 46 Snow Hill Street in the North End which directly abuts 53 Hull Street. The 46 Snow Hill Street building covers nearly all of the lot, with the exception of a lightwell that partially separates it from the 53 Hull Street building. The 46 Snow Hill Street building consists of a basement and four stories, containing four apartments. The plaintiffs occupy the building as a single-family residence. Each of the first three floors contains two front rooms and a rear room, bath and small hall closet. The fourth floor contains an open layout. It has windows on all four floors at the front and rear but no windows on either side. The rear of the building has three windows on each floor. On the fourth floor, all three rear windows are above the current roof line of the 53 Hull Street building.
The lots comprising 53 Hull Street and 46 Snow Hill Street have frontage on different streets and adjoin each other in the rear. The rear walls of the buildings physically adjoin one another in their rear yards for a distance of about one foot.
Verdi applied to the Inspectional Services Department (“ISD”) for a building permit to increase the fourth floor to a full story and add a partial fifth story and roof deck. On January 13, 1999, Verdi was denied a permit by the ISD. Verdi appealed that decision to the City of Boston Board of Appeal (“Board”) to request a variance that would allow him to build the addition. A hearing was held on April 20, 1999 and on June 15, 1999, the Board granted the variance. The plaintiffs then filed this action in Superior Court asking that the Board’s decision be annulled.

DISCUSSION

Since 1904, zoning matters in Boston have been regulated by special legislation. While the Massachusetts Zoning Act, G.L.c. 40A, provides the enabling legislation for zoning in all other cities and towns in the Commonwealth, it does not apply to Boston. Emerson College v. Boston, 393 Mass. 303 (1984). Instead, the enabling legislation for the adoption and amendment of the Boston Zoning Code is provided in 1956 Mass. Acts 665 (“the Enabling Act”). Since its adoption, the Enabling Act has been amended a number of times, most recently by 1993 Mass. Acts 461, “An Act Relative to the Zoning Commission of the City of Boston.” While its title refers only to the Zoning Commission, 1993 Mass. Acts 461 also amends the Enabling Act’s provisions concerning the Board of Appeal and appeals to the courts.
In reviewing a Board of Appeal decision, the Superior Court “shall hear all pertinent evidence and determine the facts, and upon the facts as so determined, annul such decision if found to exceed the authority of such board . . .” Enabling Act, §11. Thus, the Superior Court, acting as an independent fact finder, conducts a de novo review of Board of Appeal decisions upon an appeal under the Enabling Act, §11. Lynch v. Bd. of Appeal of Boston, 1 Mass.App.Ct. 353, 358 (1973). The courts should sustain the Board’s decision if sufficient evidence demonstrates that the statutory prerequisites for the decision have been met. Broderick v. Bd. of Appeal of Boston, 361 Mass. 472, 479 (1972).
Section 11 provides that: “Any person aggrieved by a decision of. . . [the] board of appeal, whether or not previously a party to the proceeding, or any municipal board of officer, may appeal [to the courts] . . .” Enabling Act, §11. Few appellate cases have addressed the issue of standing for persons challenging Board of Appeal decisions under § 11 of the Enabling Act. However, because the language of this section is identical to that of G.L.c. 40A, §17 in granting standing to any “person aggrieved,” the Appeals Court has determined that it may look to cases outside Boston to determine the meaning of aggrieved status. Sherrill House, Inc. v. Board of Appeal of Boston, 19 Mass.App.Ct. 274, 275 (1985).
“Only a limited class of individuals — those whose property interests will be affected — is given the standing to challenge the board's exercise of its discretion to grant a special permit or variance.” Green v. Board of Appeals of Provincetown, 26 Mass.App.Ct. 469, 479 (1988). Such individuals acquire standing by asserting “a plausible claim of a definite violation of a private right, a private property interest or a private legal interest.” Harvard Square Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass.App.Ct. 491, 492-93, review denied, 405 Mass. 1204 (1989). An abutting landowner is presumed to be a “person aggrieved” under the Enabling Act. 1956 Mass. Acts 665, §11. Where the plaintiffs standing is challenged, the presumption will vanish and the issue will be determined on all the evidence.
To determine whether a plaintiff is a person aggrieved under Section 11, the court must first decide whether the plaintiff plausibly claims that he or she will sustain some harm as a proximate result of the challenged zoning decision. Boston Edison Co. v. Boston Redevelopment Auth., 374 Mass. 37, 46 (1977). Second, the court must identify the nature of the interests the zoning scheme was intended to protect. Zoning appeals may be brought only to protect those *534 “legal rights" the zoning ordinance or bylaw was intended to create. Redstone v. Board of Appeals of Chelmsford, 11 Mass.App.Ct. 383, 385 (1981). Third, the plaintiffs’ property and the use of that property must be among the class of property and the class of uses the zoning scheme was intended to protect. Bedford v. Trustees of Boston Univ., 25 Mass.App.Ct. 372, 376-77 (1988).
In the instant case the plaintiffs maintain they have standing in four specific ways: (1) loss of view; (2) loss of open space and density; (3) obstruction of airflow; and (4) loss of direct sunlight. This court will address each argument in turn.
First, a change in an abutter’s view may constitute a specific legal injury, only if the visual character of the neighborhood is protected in the zoning code itself. Monks v. Zoning Board of Appeal of Plymouth, 37 Mass.App.Ct. 685, 688 (1994). Zoning codes do not “protect a particular property owner’s view. ” Federman v. Board of Appeals of Marblehead, 35 Mass.App.Ct. 727, 732 (1994). Standing may also arise where the loss of view is so extreme as to have an impact upon the value of the abutter’s property. Tsagronis v. Board of Appeals of Wareham, 415 Mass. 329, 330 fn. 4 (Abrams, J., dissenting). In this case, the zoning codes do not protect a particular property owner’s view. In addition, the plaintiffs have not argued, nor is this court persuaded upon viewing the location, that the loss of view is so extreme as to have an impact upon the value of the abutter’s property. Accordingly, the plaintiffs cannot establish standing due to a loss of view.
Second, the Boston Zoning Code defines “open space” as “. . . open space in private ownership for active or passive recreational use or for conservation of natural resources.” Boston Zoning Code [CITE], Verdi’s variance was sought so that he might remove a partial story and add two stories to his existing building. There is no allegation that Verdi is building on open space as defined in the Code. Accordingly, there is no legal right to “open space” affected by the proposed addition to Verdi’s building.
The plaintiffs argue that the addition will cause a 33% increase in density based on the amount of floor space that will be added to Verdi’s apartment. Verdi’s building, as well as the immediately surrounding area, is zoned as a Multifamily Residential Subdistrict (“MFRS”) within the North End Neighborhood District. This district was established to encourage medium-density multifamily areas with a variety of allowed housing types, including one-, two- and three-family Dwellings, Row Houses, Town Houses, and Multifamily Dwellings. Since Verdi’s building is already a three-family building, an increase in the square footage of one apartment is not going to add to the density of the neighborhood in any discernable way. Therefore, the plaintiffs cannot establish standing based on an increase in density.
The Boston Zoning Code provides that it seeks to provide “adequate light and air” in the North End. Boston Zoning Code, Article 54-1. The plaintiffs may only claim infringement of their legal rights, that is the rights stated in the applicable zoning laws. In this case, that is the right to adequate light and air. The plaintiffs gave testimony that their airflow may be affected, but did not sufficiently show that the airflow remaining would be inadequate. In addition, although the plaintiffs presented evidence to show that some direct sunlight on certain days at certain times late in the afternoon would be blocked by the addition, there was no evidence presented to show that the addition would result in a loss of “adequate light” to their building. Accordingly, the plaintiffs cannot establish standing based on a loss of light and air.
Although this Court can now comfortably say that the plaintiffs are not “aggrieved persons” which would give them standing to challenge the Board’s decision, since this Court did hear all the evidence in this de novo case regarding the granting of the variance, in an abundance of caution, the Court will review the decision of the Board of Appeal.
Section 9 of the Enabling Act authorizes the Board to grant a variance for a parcel or building where: “. . . owing to conditions especially affecting such parcel or such building, but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of such zoning code would involve substantial hardship to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent and purpose of such zoning regulations, but not otherwise.” Enabling Act, §9.
The Board shall grant a variance only if all of the following conditions are met:
(a) That there are special circumstances or conditions, fully described in the findings, applying to the land or structure for which the variance is sought (such as, but not limited to, the exceptional narrowness, shallowness, or shape of the lot, or exceptional topographical conditions thereof) which circumstances or conditions are peculiar to such land or structure but not the neighborhood, and that said circumstances or conditions are such that the application of the provisions of this code would deprive the appellant of the reasonable use of such land or structure;
(b) That, for reasons of practical difficulty and demonstrable and substantial hardship fully described in the findings, the granting of the variance is necessary for the reasonable use of the land or structure and that the variance as granted by the Board is the minimum variance that will accomplish this purpose; [and]
(c) That the granting of the variance will be in harmony with the general purpose and intent of this *535 code, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare . . .
In determining the findings, the Board of Appeal shall take into account: (1) the number of persons residing or working upon such land or in such structure; (2) the character and use of adjoining lots and those in the neighborhood; and (3) traffic conditions in the neighborhood. Enabling Act, §7-3.
“The granting of a variance is proper only when there are findings with respect to all of these requirements.” Warren v. Zoning Board of Appeals of Amherst, 383 Mass. 1, 9-10 (1981). “No person has a legal right to a variance and they are to be granted sparingly.” Broderickv. Board of Appeal of Boston, 361 Mass. 472, 479 (1972). In reviewing the Board’s decision granting a variance, the judge “is required to hear the matter de novo and determine the legal validity of the decision of the board upon the facts found by him.” Jones v. Board of Appeals of Brookline, 362 Mass. 290, 295 (1972). “The burden in such an appeal is on the person seeking the variance.” The 39 Joy Street Condominium Association v. Board of Appeal of Boston, 426 Mass. 485, 488 (1998).
In this case, the Board’s decision contains detailed findings. It is clear to this Court that the Board’s findings are proper with respect to all of the legal requirements. The conditions which affect this building are unique to this particular building including, its odd shape, limited land area, location and style of construction. The Board noted the irregular trapezoidal shape of the lot limits its usable space and makes construction of facilities and egress difficult. The findings go on to say, “these circumstance are peculiar to this land and structure as compared to neighboring properties and the zoning district as a whole.” In addition, the Board also made the following findings:
(a) the specific site is an appropriate location for such use;
(b) the use will not adversely affect the neighborhood;
(c) there will be no serious hazard to vehicles or pedestrians from the use;
(d) no nuisance will be created by the use; and
(e) adequate and appropriate facilities will be provided for the proper operation of the use.
My de novo review of Verdi’s request for a variance confirms all the findings, as well as the decision of the Board. The subject property is unique, the proposed use of the property is reasonable and proper, the proposed increase in height will not adversely affect any protected right of the plaintiffs, and the proposed use is consistent with the neighborhood. In fact, my view of the neighborhood and the two units involved in this case, 53 Hull Street and 46 Snow Hill Street, establishes (1) how logical Verdi’s proposal is for the reasonable use of his premises and (2) how no injury will occur to the legally recognized interests of the plaintiff abutters or the neighborhood. In this Court's opinion, Verdi's proposal will not adversely impact the plaintiffs' sources of light or air or restrict their view in any way substantially different than occurs at the present time without the addition.
Accordingly, the defendant has met his burden in showing that the granting of the variance was proper. Therefore, the decision of the Board is affirmed.

ORDER

It is therefore ORDERED that the Board’s decision is AFFIRMED.