Burnes, J.
INTRODUCTION
Defendant Francine Gannon (“Gannon”) moves for summary judgment arguing that the plaintiffs Maiy McGee and Thomas F. Schiavoni (“McGee and Schiavoni”) do not have standing in this case and that their standing can be decided in this case on summary judgment because the issue of their standing has been decided in another proceeding. For the reasons set out in this opinion, the court ALLOWS Gannon’s motion.
*440 BACKGROUND
McGee and Schiavoni own and reside at 46 Snow Hill Street (the “McGee/Schiavoni property”) in the North End of Boston. McGee and Schiavoni have appealed from the grant to Gannon of a zoning variance which would permit Gannon to reconstruct the dilapidated existing two-family, three-story building on the site at 55 Hull Street (the “Gannon property”) into a five-story, two-family dwelling.
Snow Hill Street intersects with Hull Street. There is a building on the comer of Snow Hill Street and Hull Street which appears to be numbered 45 on Snow Hill Street and 51 on Hull Street.[2] The McGee/Schiavoni property abuts this building on Snow Hill Street. William J. Verdi (“Verdi”) owns properly at 53 Hull Street (the “Verdi property”). The Verdi property abuts the corner building on Hull Street. The McGee/Schiavoni property abuts the Verdi property in the rear. The Gannon property abuts the Verdi property, as they are adjacent properties on Hull Street. The McGee/Schiavoni property does not abut the Gannon property.[3]
In January 1999, Verdi applied to the City of Boston Board of Appeal (“Board") for a variance from the city’s zoning code to allow him to construct a full fourth floor and add a partial fifth story and a roof deck. The Board granted the variance and McGee and Schiavoni appealed, asking the Superior Court to annul the Board’s decision.[4]
In the trial de novo on October 15 and 16, 2001, before the Superior Court, Cratsley, J., McGee and Schiavoni claimed
that their view from their left most rear fourth floor window would be blocked,
that open space and density would be affected,
that airflow and present wind currents would be altered, and
that direct sunlight at the left fourth floor rear window would be reduced by the “shadow” of the Verdi addition.
That is to say, McGee and Schiavoni claimed that their view from the rear, open space, density, airflow and sunlight would be affected by the Verdi addition. After a full hearing, the court determined that McGee and Schiavoni did not have standing to object to the granting of the variance to Verdi. The judgment in this case is final in the Superior Court and is on appeal.
In the meantime, Gannon sought her variance. In her application, Gannon sought a variance which would allow her to reconstruct the two-family, three-story, wood-frame, dilapidated structure, that is currently uninhabitable, to erect a five-story, two-family dwelling. By a decision dated November 21, 2000, the Board granted the variance to Gannon and McGee and Schiavoni appealed.
In their papers in this case appealing from the grant of the variance to Gannon, McGee and Schiavoni claim
that the increase in floor area ratio and filling of the back yard with a building would severely reduce open space, light and air flow to the rear of the McGee/Schiavoni residence and would cut off views from the rear and
that the height increase would significantly restrict light and air flow to the rear of the McGee/Schiavoni building and would sharply reduce the views from the upper floor rear windows of the building.
In summary, McGee and Schiavoni complain that the Gannon building will affect the view, open space, density, airflow, and light.
Gannon says that McGee and Schiavoni do not have standing to complain about these effects on them. Further, says Gannon, McGee and Schiavoni have already had a full opportunity to litigate their standing and have lost. As a matter of law, says Gannon, they should not be permitted to litigate this issue again.
LEGAL DISCUSSION
A person must have a chance to litigate an issue. But once that issue has been determined, the person may not litigate it again. And another person may use the determination of the issue as a defense in subsequent litigation, so long as certain conditions have been met. That is:
If the issue in the prior adjudication is identical to the issue in the current adjudication, and
If the issue decided in the prior adjudication was essential to the earlier judgment, and
If there was a final judgment on the merits in the prior adjudication, and
If the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication,
then the issue has been determined and may not be litigated again. Green v. Town of Brookline, 53 Mass.App.Ct. 120, 123 (2001), cert, den., 435 Mass. 1108 (2002). See also Comm'r of the Dep’t of Employment & Training v. Dugan, 428 Mass. 138, 141-42 (1998) (“Dugan”). One need not have been a party in the prior litigation to assert collateral estoppel; it is the party against whom the estoppel is sought who must have had the chance to litigate the issue. See Bourque v. Cape Southport Associates, LLC., No. 01-P-1590 (App.Ct. Jan. 5, 2004), slip op. at 2-3, citing Bailey v. Metropolitan Property & Liab. Ins. Co., 24 Mass.App.Ct. 34, 37 (1987).
Standing is jurisdictional. If a person does not have standing to challenge the grant of a variance, then the court need go no further. See Watros v. Greater Lynn Mental Health & Retardation Association, Inc., 421 Mass. 106, 107 (1995). See also Barvenik v. Aldermen of Newton, 33 Mass.App.Ct. 129,131 (1992). The rules governing standing are the same under the City of *441 Boston zoning code as they are under the Massachusetts Zoning Act, G.L.c. 40A. See Sherrill House, Inc. v. Board of Appeal of Boston, 19 Mass.App.Ct. 274, 275 (1985), cert, denied, 394 Mass. 1103 (1985). A person has standing if he or she is a “person aggrieved” by certain zoning decisions. See G.L.c. 40A, §17. An abutter or an abutter to an abutter is presumed to be a “person aggrieved” with standing. Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204 (1957). This presumption fails if the defendant offers proof, supported by evidence, that there is no standing. Id. The plaintiff must then put forth credible evidence to substantiate his allegations and the question of standing is then a question of fact for the trial judge. See generally Denneny v. Zoning Bd. of Appeals of Seekonk, 59 Mass.App.Ct. 208, 211-13 (2003).
In the Verdi case, McGee and Schiavoni claimed that they had standing “in four specific ways: (1) loss of view; (2) loss of open space and densily; (3) obstruction of airflow; and (4) loss of direct sunlight.” McGee v. Dennis et al and Verdi, 2002 WL 1020743 at *3, 14 Mass. L. Rptr. 532 (Mass.Super. Feb. 12, 2002) (Cratsley, J.) (“Verdi”). The Superior Court judge carefully considered each separate claim and determined that none of them conferred standing on McGee and Schiavoni. Id.[5] In the Gannon case, McGee and Schiavoni claim that they have standing because the Gannon house, if built as allowed by the variance, will interfere with their view out of the rear of their house to the west (this is the same aspect that McGee and Schiavoni claimed would be blocked by the Verdi addition), will cause a loss of open space and will increase the density of the area, and will obstruct the airflow and light to their windows. These are the same claims that the judge determined in the Verdi case were not sufficient to confer standing.
Standing to complain of the variance granted to Verdi was the essential issue in that case; standing to complain of the variance is the essential issue in this case. See Jarosz v. Palmer, 436 Mass. 526, 533 (2002) (for collateral estoppel to apply, “the finding must be regarded by the court and the party as essential to a determination on the merits”). Because the Verdi and Gannon properties abut each other and stand to the southeast through the northwest of the McGee/Schiavoni properly, the factual considerations underlying the determination of standing, if not identical, are so close that to grant standing in the Gannon case, where the claimed injuries are the same and the property is farther away from the McGee/Schiavoni property than is the Verdi property, would be clearly erroneous. See Dugan, supra, 428 Mass, at 143-44 (even where the identity of issues is not exact, where they are so substantially identical preclusion is appropriate), citing Restatement (Second) of Judgments, §27 cmt. c (1982). See also Nickerson v. Zoning Bd. of Raynham, 53 Mass.App.Ct. 680, 682-83 (2002), cert, denied, 436 Mass. 1104 (2002) (where proof of particularized injuiy “so slim,” a finding of standing would be clearly erroneous).
Not so, say McGee and Schiavoni. And the argument goes this way: While we did complain about the same categories of problems, we now have different proof to show how these problems affect us. We did complain about the loss of view in the Verdi case, but we did not know just how important that would be. We knew that there was going to be a new bridge that we could see, but we did not know how beautiful the Zakim/Bunker Hill Bridge would be and how important it would be to have a view of that bridge. And we now have a real estate expert who has given an opinion that the value of our property will be diminished if we cannot see the bridge from our rear fourth-floor window. Furthermore, we also now have an expert who will opine as to the loss of air flow and the effect of that on our property.[6] And, lastly, the effect of this property on ours will be different, because the Gannon building will be higher and will fill up the back yard which has been open until now.
I will take these points, one by one. First, as to the view: In general, zoning codes do not protect a property owner’s view. Federman v. Board of Appeals of Marblehead, 35 Mass.App.Ct. 727, 732 (1994). It may be possible to achieve standing from the loss of view, if one offers proof that the particular property will be diminished in value because of this loss. Tsagronis v. Board of Appeals of Wareham 415 Mass. 329, 330 and n. 4 (1993). And this is what McGee and Schiavoni now offer. The trouble with this is that the effect on this view of the construction at the Gannon property is no different than the effect of the construction at the Verdi property and that matter has already been litigated. McGee and Schiavoni say that they could not have known how important this view would be before the bridge was built and people fell in love with it. They offer photos of the view in 1999 with the cranes indicating where the bridge would be and in 2000 showing the towers of the bridge. Affidavit of Maty McGee, ¶¶12-13, Exhibit 6 (1999 photo of general direction of the bridge) and Exhibit 7 (photo of the “wishbone” towers of the bridge, taken before November 2000). The Verdi trial de novo was held in October 2001. McGee and Schiavoni could have offered photos of the bridge towers in that litigation.[7]
It is true that the top of the new Gannon building at 55 Hull Street, where it abuts the Verdi property at 53 Hull Street, is slightly higher (a foot or so, perhaps, see Defendant Francine Gannon’s Memorandum of Law in Support of Her Motion for Summary Judgment, at Exhibit E, Elevation of proposed residence at 55 Hull Street) than the proposed new construction at 53 Hull Street. There is no evidence, however, that the height of 55 Hull Street from the perspective of 46 Snow Hill Street will have any greater effect than the height of the proposed new building at 53 Hull Street. Hull Street is very steep; it falls away two feet over 19 *442 feet. See Decision, Board of Appeal, November 21, 2000. In any case, the height is relevant only as it may affect the view and McGee and Schiavoni have already had their chance to litigate that issue.
The Gannon variance allows Gannon to build in her rear yard. This will certainly mean that there is more building on the lot. It does not mean, and McGee and Schiavoni have offered no evidence, that the air flow to the McGee-Schiavoni property will be inadequate. Nor does it mean that the density of the property will be increased in a way that will affect McGee and Schiavoni uniquely. See Barvenik, 33 Mass.App.Ct. at 132 (injury claimed by plaintiff must be “special and different from the concerns of the rest of the community”); Denneny, 59 Mass.App.Ct. at 211-12 (claimed injury must be personal to plaintiff). Density, in zoning parlance, refers to people; it does not normally refer to the size of buildings. See generally 1 Douglas W. Kmiec, Zoning & Planning Deskbook §5.6 (2d ed. 2003) (“In response to this desire to live in sparsely populated areas, suburban communities enact ordinances which regulate uses based on their density”). McGee and Schiavoni criticize Judge Cratsley for saying, as they interpret his opinion, that there will be no increase in density because there was no “increase in the number of buildings.” Plaintiffs’ Opposition to Fran cine Gannon’s Motion for Summary Judgment, Conscise Statement of Legal Elements, p.6, ¶5. McGee and Schiavoni misread the opinion. Judge Cratsley said that there would be no increase in density from increasing the floor area of one apartment. Verdi, 2002 WL 1020743 at *3. A fair reading of that conclusion is that there would likely be no, or few, more people who would live in the new apartment than in the old. The rationale is the same for the Gannon property — it is now a two-family house; it will be a two-family house when reconstructed.
It simply is not fair for McGee and Schiavoni to litigate once the facts which they say support their claim on standing, lose, and then offer evidence in a second litigation that was available at the time of the first. What a party is entitled to is a full and fair opportunity to litigate an issue — once. McGee and Schiavoni have had that one opportunity.
Lastly, McGee and Schiavoni complain that Gannon should not get the benefit of the decision in the Verdi case, because she did not join in that litigation. This argument makes no sense in the face of McGee and Schiavoni’s argument that the reason that they should be able to go forward in this case is because the effect on their property from the Gannon reconstruction would be so different from the effect of the Verdi construction. The fact of the matter is that Gannon could pursue her variance on her time line. She could easily have decided not to join the Verdi litigation because she was more likely to defeat McGee and Schiavoni’s standing: her property was farther away from McGee and Schiavoni and their property did not abut hers. She was certainly not required to join the Verdi litigation. She is now, however, entitled to assert that the issue of McGee and Schiavoni’s standing has already been decided and that it would be a waste of this court’s time to hold another full trial on an issue that has been fully litigated. The court agrees.
A judgment is final for the purpose of collateral estoppel when “the parties were fully heard, the judge’s decision is supported by a reasoned opinion, and the earlier opinion was subject to review or was in fact reviewed.” Tausevich v. Board of Appeals of Stoughton, 402 Mass. 146, 149 (1988). A judgment is final for collateral estoppel purposes, even if the judgment is of a lower court and is on appeal. O’Brien v. Hanover Ins. Co., 427 Mass. 194, 200-01 (1998) (adopting federal and majority rule that a “trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal”). See also Restatement (Second) of Judgments, §13 cmt. f (1982). The judgment in the Verdi case is final.
As a matter of law, Gannon has met all the requirements to collaterally estop McGee and Schiavoni from litigating their standing in this case. There are no material facts in dispute; there is no triable issue for this court. Summary judgment is appropriate.
ORDER
For the reasons set out in this opinion, the motion for summary judgment brought by defendant Gannon is allowed. Judgment will enter dismissing this case.

See street plan attached to this opinion. [Editor’s note: the referenced attachment has not been reproduced herein.)

See schematic drawing attached to this opinion. [Editor’s note: the referenced attachment has not been reproduced herein.]

The facts of this case are taken from the parties’ submissions and the written decision of the Superior Court judge who heard the appeal from the grant of the Verdi variance.

Although not necessary to his opinion, the judge went on, in an excess of caution and because he had heard all the evidence offered, to consider and then determine that the grant of the variance to Verdi was proper. Verdi, 2002 WL 1020743 at *4.

This argument goes nowhere for the reasons stated in Judge Cratsley’s opinion. There is no evidence that the air flow will not be adequate as required by the Boston Zoning Code. That is the only interest protected. Verdi, 2002 WL 1020743 at *4. See also Tsagronis v. Board of Appeals of Wareham, 415 Mass. 329, 335 (Abrams, J., dissenting) (diminution of light and air does not give standing).

Furthermore, while the court can take judicial notice of the fact that the Zakim/Bunker Hill bridge has become an instant and loved landmark, it is hard to believe that the value of the McGee/Schiavoni property will decline by 15-20% with the loss of that view from the property’s rear fourth-floor window. See Marshalian v. Zoning Board of Appeals ofNewburyport, 421 Mass. 719, 723 (1996) (“abutters must put forth credible evidence to substantiate claims of injury to their legal rights”) (emphasis added).